

NEIL TORCZYNER
Attorney at Law
DIRECT TEL.: 516.355.9612
DIRECT FAX: 516.355.9613
NTORCZYNER@HKPLAW.COM

December 21, 2017

U.S. Magistrate Judge Daniel J. Stewart
James T. Foley U.S. Courthouse
445 Broadway - 4th Floor
Albany, New York 12207

By: ECF

Re: Cinthia Thevenin, et al. v. The City of Troy, et al.
Docket No: 16-CV-01115(DJS)

Dear Judge Stewart:

The firm of Harfenist Kraut and Perlstein, LLP along with Hach & Rose, LLP, represents the Plaintiff in this matter. As the Court may recall, this lawsuit relates to an April 17, 2016 incident wherein Defendant Randall French ("French") shot and killed Edson Thevenin while French was performing his duties as a Troy Police Department ("TPD") Sergeant.

I submit the instant letter brief in support of Plaintiff's request for an Order: (1) compelling French to produce copies of reports which he prepared in connection with the April 17, 2016 incident and (2) requiring witnesses Christopher Parker ("Parker") and Brandon Galligan ("Galligan") to testify as to any statements made by French during a TPD "stress debrief" session. Permission for this motion was granted during a discovery status conference on November 28, 2017. (Docket Entry #45).

**The French Reports**

During French's July 28, 2017 deposition, French testified that he was familiar with a TPD form called a Response to Resistance Report ("RRR")(French Tr. at pp.88-89).[1] French testified that TPD officers are required to complete a RRR any time that force is used, unless the officer is injured in such a way that it is impossible. (French Tr. at p.89). French testified that this would apply to an officer who uses his service weapon in an officer involved shooting. (French Tr. at p.90).

Although the RRR is supposed to be completed by officers following an event, French did not complete a RRR in connection with the incident, and he testified that he was neither instructed to complete or not to complete a RRR form. (French Tr. at p.90).

---

[1] Copies of relevant portions of the French Deposition Transcript are appended hereto as Exhibit "A".

3000 MARCUS AVENUE, SUITE 2E1
LAKE SUCCESS, NY 11042
T – 516.355.9600 F – 516.355.9601

2975 WESTCHESTER AVENUE, SUITE 415,
PURCHASE, NY 10577
T – 914.701.0800 F – 914-708-0808.

French testified that prior to the day of the deposition he had not discussed with any attorney whether or not he should prepare the RRR form. (French Tr. at pp. 90-91). French also testified that prior to the date of the deposition, he had not been advised by any attorney not to fill out a RRR form. (French Tr. at p.91).

Notwithstanding the above, French testified that prior to the deposition, French had begun to prepare the RRR on a computer in his home and that it was still on his home computer. (French Tr. at pp.93-94). French was unsure when he began to prepare the RRR form, but knew that it was at least a week after he testified before the grand jury. (French Tr. at p.95). French was unable to specifically identify the date that he prepared the RRR, but he stated that it was at some point after the end of April 2016 and prior to June 2017. (French Tr. at p.95).

In addition to preparing the RRR, French testified that he also prepared a Supplemental Report ("SR") that is required for officers involved in motor vehicle accidents. (French Tr. at pp.95-96). Similar to the RRR, French testified that the SR was saved on his home computer and that he was still in the process of preparing the SR (French Tr. at p.96). French also testified that he prepared the SR in and around the same time frame that he prepared the RRR. (French Tr. at p.96).

French testified that Andrew Safranko (his private counsel) is aware that he began to prepare the RRR & SR forms and that he e-mailed copies of those reports to Mr. Safranko. (French Tr. at pp.96-98).

On September 11, 2017, Plaintiff served a Second Request for Production of Documents[2], which included in pertinent part, demands for:

- Any and all drafts of the Response to Resistance Report (Demand 27);
- Any and all "supplemental reports" prepared by French (Demand 30); and
- The date of the email in which French provided his counsel with the draft supplemental report and response to resistance report. (Demand 32)

On October 17, 2017, Defendants served their Response to Plaintiff's Second Request for Production of Documents.[3] In response to Demands 27 and 30, the Defendants stated "Answering Defendants object to this demand as it seeks information beyond the permissible scope of Fed. R. Civ. Proc. Rule 26(b)(l) as being irrelevant to the subject matter of the action and/or not reasonably calculated to lead to the discovery of admissible evidence." In response to Demand 32, Defendants reiterate the same objection as contained in Demand 32 and additionally asserted that "any communication made between Sgt. French and his criminal defense attorney are subject to attorney-client privilege."

---

[2] A copy of the Second Demand for Production of Documents is appended hereto as Exhibit "B".
[3] A copy of Defendants' Response to Plaintiff's Second Demand for Production of Documents, *sans* exhibits, is appended hereto as Exhibit "C".

By letter dated October 20, 2017, the undersigned responded to Defendants' objections to Demands 27, 30 & 32, advising that since the reports related to the incident involving French and the decedent and were reports which French testified that he was required to prepare, the reports were relevant and should be produced.[4] Additionally, Plaintiff requested that French identify the date of the communication as the date of an attorney-client communication is usually identified in a privilege log.

Defendants responded by letter of November 8, 2017, which stated that counsel had:

*[A]scertained from Sgt. French's criminal defense attorney that these documents were prepared by Sgt. French, at the direction of counsel, in anticipation of a criminal action against him. As such, Defendants object to this demand as the documents requested is attorney work-product and subject to attorney-client privilege.*

Additionally, Defendants provided a privilege log as to the e-mail which identified it as being sent on April 26, 2016.[5]

Following this letter, the undersigned met in person and conferred with John Aspland, but the issues were not able to be resolved. Thereafter, the parties raised this issue in a November 9, 2017 letter to the Court (Docket Entry #43).

During the parties' next telephone conference with the Court on November 28, 2017 (Docket Entry #45), the Court requested that Defendants prepare a privilege log in connection with any assertion of privilege. The privilege log which was provided on December 11, 2017 indicates that there were three reports – the RRR, Supp and a "Post Pursuit Report." The privilege log also indicates that the documents were created on April 25, 2016 and claims protection of the reports under the attorney-work product and attorney-client privileges.[6]

**The French Reports are not Privileged**

It is well established that "the party asserting the work-product privilege 'bears the heavy burden of establishing its applicability.'" *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013). *See also Smith v. Goord*, 222 F.R.D. 238, 240 (N.D.N.Y. 2004)("[t]he party seeking to invoke the privilege bears the burden of justifying its application'). Although the November 8, 2017 letter indicates that French asserts that the documents are "*attorney work-product and subject to attorney-client privilege*", French cannot meet his burden as the attorney work product doctrine does not apply to the records.

As jurisdiction in this matter is based on a federal question, this Court would apply the Federal privilege laws. *See In re Zyprexa Prod. Liab. Litig.*, 254 F.R.D. 50, 52 (E.D.N.Y. 2008)("It is axiomatic that state privilege laws do not govern in federal question cases. And

---

[4] A copy of Plaintiff's October 20, 2017 letter, is appended hereto as Exhibit "D".
[5] A copy of Defendants' November 8, 2017 letter and privilege log, is appended hereto as Exhibit "E".
[6] A copy of Defendants' December 11, 2017 letter and privilege log, is appended hereto as Exhibit "F".

even where a federal question case contains pendent state law claims, the federal law of privileges still obtains). See also *Bayne v. Provost*, 359 F. Supp. 2d 234, 238 (N.D.N.Y. 2005)("When the evidence sought is relevant to both the federal and state claims, several United States Courts of Appeals have held consistently that the asserted privileges are governed by the principles of federal law").

Under FRCP 26(b)(3) there is a qualified privilege for materials prepared in anticipation of litigation. As discussed by then Magistrate Judge Hurd in *Worthington v. Endee*, 177 F.R.D. 113 (N.D.N.Y. 1998):

> Codified at Rule 26 of the Federal Rules of Civil Procedure, the work product doctrine shields from discovery "documents and tangible things ... prepared in anticipation of litigation...." Fed.R.Civ.P. 26(b)(3). The doctrine preserves an attorney's professional ability to provide legal services in a manner that is private, confidential, and discrete from an adversary. In addition, it "grants counsel an opportunity to think or prepare a client's case without fear of intrusion...." The doctrine "establish[es] a zone of privacy for strategic litigation planning ... prevent[ing] one party from piggybacking on the adversary's preparation." Finally, like the attorney/client privilege, the work product doctrine is not without limitations. Fed.R.Civ.P. 26(b)(3). Consequently, the qualified privilege is restricted by common sense and the practicalities of litigation.

*Id.* at 116 (internal citations omitted)

In applying FRCP 26(b)(3) to accident or incident reports, the District Courts of this Circuit have routinely ruled that they are not protected under the Attorney Work Product privilege. See generally *Willis v. Westin Hotel Co.*, 1987 WL 6155, at *1 (S.D.N.Y. Jan. 30, 1987)("Under both New York law, and the Federal Rule, material prepared by non-attorneys in anticipation of litigation, such as accident reports and other investigative reports, is immune from discovery only where the material is prepared exclusively and in specific response to imminent litigation. The mere contingency that litigation may result does not give rise to the privilege"). See also *Snyder v. Winter*, 159 F.R.D. 14, 15 (W.D.N.Y. 1994)(applying *Willis* and requiring production of an accident report prepared by an officer of the defendant and the driver of the vehicle) and *Calabro v. Stone*, 225 F.R.D. 96, 99–100 (E.D.N.Y. 2004)("Federal courts in the Second Circuit have not routinely shielded documents such as accident reports from discovery; rather, they have required proof that the material "is prepared exclusively and in specific response to imminent litigation").

Recently in *Vessalico v. Costco Wholesale Warehouse*, 2016 WL 3892403 (E.D.N.Y. July 14, 2016), the Eastern District spoke to this issue and required production of incident reports, explaining that:

> The federal work-product doctrine protects from disclosure "documents prepared 'in anticipation of litigation or for trial by or for [a] party or by or for that ... party's representative.'" Relevant here, "material prepared by non-attorneys in anticipation of litigation, such as accident reports and other investigative reports, is immune

> from discovery only where the material is prepared exclusively and in specific response to imminent litigation." "Documents prepared in the ordinary course of business, or which would have been prepared in essentially the same form irrespective of the litigation, are not protected by [the work-product doctrine]."). To that end, "[t]he mere contingency that litigation could result is not sufficient to trigger protection under the work product doctrine." The party resisting discovery, whether based on the work-product doctrine or the attorney–client privilege, bears the burden of establishing that the communication is protected from disclosure.
>
> Here, Defendant has failed to establish that the Accident Report is protected from disclosure pursuant to either the attorney–client privilege or the attorney work-product doctrine. Defendant argues that the Accident Report is "clearly immune from disclosure" because Costco's Assistant General Manager Cheryll Serio testified that the "report is prepared solely for Costco's legal department as once it is prepared it is sent directly to Costco's General Liability Department." See DE [28] at 2. However, "an investigative report does not become privileged merely because it was sent to an attorney." Indeed, the Accident Report is essentially a factual account of Vessalico's September 10, 2011 accident. Because the Accident Report is not "primarily or predominantly of a legal character," it is not protected from disclosure pursuant to the attorney–client privilege.

*Id.* at *2.

Although there are no reported cases in this Circuit involving a police officer who filled out an official form and provided it to privately retained counsel, the District Courts of this Circuit have found that police investigatory reports, including internal affairs summaries are not protected by work product privilege. *See general Mercy v. Suffolk Cty.*, 93 F.R.D. 520, 522 (E.D.N.Y. 1982)(ordering disclosure of internal affairs reports prepared in the ordinary course of business). *See also Thompson v. Keane*, 1996 WL 125659, at *1 (S.D.N.Y. Mar. 20, 1996)(ordering disclosure of unredacted copies of the investigation file of Plaintiff's internal complaint that he was framed by corrections officers) and *Morrissey v. City of New York*, 171 F.R.D. 85, 92 (S.D.N.Y. 1997)(However, the court finds that the defendants have failed to make a substantial threshold showing of particular harm insofar as the substance of the IAB status reports are concerned. Numerous courts in this District and elsewhere have expressed skepticism about the assertion by police departments that disclosure will result in the chilling of police candor").

In *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 228 (S.D.N.Y. 1987), Magistrate Dollinger ordered production of an investigatory file of a discrimination complaint within the NYPD, stating that

> Although she may depose the officers, it is altogether unlikely that they will be able to recall with any degree of precision what they were asked and what they told the interviewer more than two years ago. Moreover, the nuances of these questions and answers—which cannot reasonably be expected to be obtained now by

deposition—could well be critical to determining whether there is any basis for plaintiff's claim of a departmental policy against enforcement of anti-discrimination requirements.

As for the Department's claimed need for confidentiality, it does not appear especially compelling in the particular circumstances of this case. It bears emphasis that the courts have generally been unreceptive to claims of this kind in the context of private citizen suits brought under the federal civil rights laws.

Id. at 228 (internal citations omitted).

In the case at bar, Magistrate Dollinger's reasoning would support the disclosure of these reports. French testified that he prepared these mandatory forms within ten days of the incident. Although French did sit for a deposition more than fifteen months later, the precision of his recollection certainly may have eroded. Furthermore, much like the reports at issue in *Vessalico v. Costco Wholesale Warehouse,* the reports which are the subject of Plaintiffs' demand in this matter are presumably factual in nature and contain French's account of the events which took place on April 17, 2016. As such it is respectfully submitted that French should be required to produce the TPD forms he prepared.

**The Officers Should Testify About Statements Made by French**

The second issue raised during the parties' telephone conference with the Court, relates to the testimony of Parker and Galligan about statements they heard during a "stress-debrief session." During Parker's deposition, he testified that he had a departmental "meeting because of the trauma I went through." (Parker Tr. at p.66).[7] The witness and counsel for Defendants indicated that there was a meeting held by the TPD in which French discussed the events that had taken place, but as Defendants counsel was unsure whether there were psychologists present or if a privilege attached, it was agreed to defer the issue of whether Parker should be required to answer questions about what he heard at the meeting. (Parker Tr. at p.67). Galligan similarly recalled being present at the meeting which he called a "stress-debrief" and again the issue was deferred. (Galligan Tr. at pp.23-24).[8]

Following the completion of those depositions, Plaintiff requested documents explaining the purpose of the meeting. In response to this demand, Defendants produced General Order No.03.26 which is titled "Peer Support Services."[9] In discussing the nature of the meeting, the General Order provides that its purpose is "to provide emotional support during and after times of personal or professional crisis to employees and their family members who express a need for assistance. (Order at §I). The General Order does not identify the members of the Peer Support Team, but it does state that the Peer Support Team members are not counselors or therapists. (Order at §II(A).

---

[7] Copies of relevant portions of the Parker Deposition Transcript are appended hereto as Exhibit "G".
[8] Copies of relevant portions of the Galligan Deposition Transcript are appended hereto as Exhibit "H".
[9] A copy of the General Order is appended hereto as Exhibit "I".

During the parties' telephone conference with the Court on November 28, 2017 (Docket Entry #45), the Court requested that Defendants provide any additional information regarding the peer meeting. In Defendants' December 11, 2017 letter which accompanied the privilege log discussed above, the Defendants identified the names of the officers who attended the session, and further stated that "[g]iven the nature and purpose of peer counseling meetings, it is our understanding that officers that took part in the meeting did so with the expectation that their communication would be kept confidential."

**The Officers Should be Required to Testify About Statements Made by French**

In *Jaffee v. Redmond*, 518 U.S. 1, 15, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) the Supreme Court made clear that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure." The "psychotherapist-patient" privilege covers all "confidential communications" made to "licensed social workers" and "licensed psychiatrists and psychologists." *Id.*

Although there are no documents which identify the attendees at the stress-debrief session, it does not appear that any licensed social worker, psychiatrist or psychologist was in attendance. This is supported by the language of the General Order which states that the Peer Support Team members are not counselors or therapists. (Order at §II(A). As such, *Jaffee* and any Federal privilege would be inapplicable.

Importantly, the Defendants' assertion in the December 11, 2017 letter of an expectation of confidentiality is contradicted by the language of the General Order. Section III(E)(1) of the Order provides that "[d]iscussions that take place involving peer services session shall be considered confidential between the parties" with certain exceptions. Subsection III(E)(1)(c) provides that one of the exceptions is meetings where "the individual seeking peer services is known to be directly involved in an incident which is under investigation by the Inspectional Services Bureau (union representative being the exception), unless otherwise authorized by the Chief of Police." Since French was under investigation by the Inspectional Services Bureau (TPD's internal affairs bureau) as a result of the shooting, there could not be a potential expectation of confidentiality as to statements which he made during the session.

Plaintiff stresses that the discovery being sought is solely of statements which were made by French during the peer counseling session. Plaintiff has no intent, nor interest in discovery of Galligan or Parker's personal experiences or feelings as a result of being on the scene after French shot the decedent. However, since Galligan and Parker were present when French discussed the incident, it is respectfully submitted that Plaintiff should be allowed to inquire as to what French said during the peer counseling session.

Lastly, should the Court grant this motion to compel disclosure, Plaintiff would respectfully request the opportunity to be heard and/or submit papers as to the payment of Plaintiff's costs and attorney's fees in support of this application under FRCP 37(a)(5)(A).

   I thank the Court for its attention to this matter and look forward to discussing this further should the Court wish to hold a conference related to this request.

        Respectfully Submitted
        HARFENIST KRAUT & PERLSTEIN, LLP

        By: *Neil Torczyner*
          Neil Torczyner

**Encl.**
**CC:** All appearing counsel (via ECF only)