```
 1  UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT COURT OF NEW YORK
 2  ------------------------------------------------------------
    CINTHIA THEVENIN, individually, and as wife of
 3  EDSON THEVENIN, Decedent, and as Administratrix of
    the Estate of EDSON THEVENIN, and as mother and
 4  natural guardian of Infant N.T., and as mother and
    natural guardian of Infant Z.T.,
 5
                                        Plaintiffs,
 6

 7      -against-                       Index No.

 8                                      16-CV-1115(NAM/DJS)

 9
    THE CITY OF TROY and SERGEANT RANDALL FRENCH,
10
                                        Defendants.
11  ------------------------------------------------------------

12          STENOGRAPHIC MINUTES OF DEPOSITION conducted of

13  RANDALL FRENCH, pursuant to Agreement, on the 28th day of

14  July, 2017, at the law offices of Fitzgerald Morris Baker

15  Firth, 16 Pearl Street, P.O. Box 2017, Glens Falls, New

16  York, commencing at 9:39 a.m.; before MICHELE AMBROSINO,

17  a Shorthand Reporter and Notary Public within and for the

18  State of New York.

19

20

21

22

23

24
```

```
 1    APPEARANCES:

 2    On behalf of Plaintiffs:

 3              HARFENIST KRAUT & PERLSTEIN, LLP
                3000 Marcus Avenue, Suite 11042
 4              Lake Success, New York 11042
                526.355.9612
 5
                BY:  NEIL TORCZYNER, ESQ.
 6                   Ntorczyner@hkplaw.com

 7
      On behalf of Defendants:
 8
                FITZGERALD MORRIS BAKER FIRTH
 9              16 Pearl Street
                P.O. Box 2017
10              Glens Falls, New York 12801
                518.745.1400
11
                BY:  JOHN D. ASPLAND, JR.
12                   Jda@fmbf.law.com

13

14

15

16

17

18

19

20

21

22

23

24
```

| | | |
|---|---|---|
| 1 | Q. | When you were siting with Sergeants Bornt and |
| 2 | | White, were you aware whether they were recording |
| 3 | | your words in any form? |
| 4 | A. | I did not see any recording devices. |
| 5 | Q. | Okay.  Are you aware whether they were typing any |
| 6 | | notes while they were speaking with you? |
| 7 | A. | I did not see a computer. |
| 8 | Q. | Are you aware of whether they were making written |
| 9 | | notes on any piece of paper of the conversation? |
| 10 | A. | I don't remember. |
| 11 | Q. | Okay.  Have you ever seen a written summary of |
| 12 | | your interview with White and Bornt? |
| 13 | A. | No. |
| 14 | | (Plaintiffs' French Exhibit 3 was marked for |
| 15 | | identification.) |
| 16 | Q. | I'm going to show you a report and ask you to |
| 17 | | look at the first page of it.  It's been marked |
| 18 | | French 3 for purposes of this deposition.  Across |
| 19 | | the top it says "City of Troy Police Department |
| 20 | | Response to Resistance Report," and it names |
| 21 | | Captain Montanino on the top right corner. |
| 22 | | Do you see that? |
| 23 | A. | I do. |
| 24 | Q. | Have you ever seen a Response to Resistance |

| | | |
|---|---|---|
| 1 | | Report? |
| 2 | A. | Yes. |
| 3 | Q. | Have you ever completed a Response to Resistance |
| 4 | | Report? |
| 5 | A. | Yes. |
| 6 | Q. | Is there something in the Troy police manual that |
| 7 | | requires or instructs an officer to complete a |
| 8 | | Response to Resistance Report? |
| 9 | A. | Yes. |
| 10 | Q. | To your knowledge, what's the requirement that an |
| 11 | | officer complete a Response to Resistance Report? |
| 12 | A. | That it shall be completed, unless they're |
| 13 | | injured in such a way that it's not possible. |
| 14 | Q. | And what specifically are the instructions for |
| 15 | | not completing a Response to Resistance Report? |
| 16 | A. | I don't recall. |
| 17 | Q. | Okay.  Leaving aside the exception to filling it |
| 18 | | out, what would be a situation that the Troy |
| 19 | | police manual would require one to complete a |
| 20 | | Response to Resistance Report? |
| 21 | A. | Anytime force is used. |
| 22 | Q. | And that force could even mean the show of force, |
| 23 | | like showing a service weapon without actually |
| 24 | | firing; correct? |

| | | |
|---|---|---|
| 1 | A. | Yes. |
| 2 | Q. | Now, using loud directive terms would not require |
| 3 | | a Response to Resistance Report; correct? |
| 4 | A. | No. |
| 5 | Q. | Did you complete a Response to Resistance Report |
| 6 | | for April 17th, 2016? |
| 7 | A. | No. |
| 8 | Q. | Were you asked to complete a Response to |
| 9 | | Resistance Report? |
| 10 | A. | No. |
| 11 | Q. | Were you told that you should not complete a |
| 12 | | Response to Resistance Report? |
| 13 | A. | No. |
| 14 | Q. | And normally if an officer uses a service weapon |
| 15 | | in an officer-involved shooting, they would |
| 16 | | generally complete a Response to Resistance |
| 17 | | Report without certain exceptions; correct? |
| 18 | A. | Correct. |
| 19 | Q. | Why is it that you did not complete a Response to |
| 20 | | Resistance Report? |
| 21 | | MR. ASPLAND:  I'm going to direct him not |
| 22 | | answer the question to the extent that it invades |
| 23 | | the attorney/client privilege. |
| 24 | Q. | All right.  Then let's make it easy. |

```
 1            Did you discuss with an attorney whether or
 2       not to complete the Response to Resistance
 3       Report?
 4            MR. ASPLAND:  Other than me, any attorney at
 5       anytime --
 6            MR. TORCZYNER:  Anytime.
 7            MR. ASPLAND:  -- is that your question?
 8            MR. TORCZYNER:  Yes.
 9   A.  When I do complete it, it will be my attorney Mr.
10       Safranko.
11   Q.  Okay.  That's for the future?
12   A.  Uh-huh.
13   Q.  I'm just asking you whether previous to today,
14       whether you discussed with any attorney the --
15       whether or not -- withdrawn.
16            Prior to today, did you discuss with any
17       attorney whether you should or should not fill
18       out the Response to Resistance Report for the
19       events of April 17th, 2016?
20   A.  No.
21   Q.  Prior to today has any attorney advised you to
22       not fill out a Response to Resistance Report?
23   A.  No.
24   Q.  You're a member of the union of the Troy Police
```

| | | |
|---|---|---|
| 1 | | Department? |
| 2 | A. | Yes. |
| 3 | Q. | Okay.  Do you have a union rep? |
| 4 | A. | We have a PBA present. |
| 5 | Q. | Okay.  Did the PBA president instruct you not to |
| 6 | | fill out a Response to Resistance Report? |
| 7 | A. | No. |
| 8 | Q. | Generally when a Response to Resistance Report is |
| 9 | | completed is it turned into a higher-ranking |
| 10 | | officer, and I use that term loosely, within the |
| 11 | | department? |
| 12 | A. | It is approved by the road sergeant, and then |
| 13 | | signed off by the commanding officer, such as the |
| 14 | | captain if they're available.  If the commanding |
| 15 | | officer's not working that night, it just goes |
| 16 | | with the sergeant's approval and gets forwarded |
| 17 | | through. |
| 18 | Q. | Okay.  You were the road sergeant that night; |
| 19 | | right? |
| 20 | A. | Yes. |
| 21 | Q. | So this wouldn't have gone to you, it would have |
| 22 | | gone theoretically to Captain Montanino? |
| 23 | A. | Or the desk sergeant can sign it in that case. |
| 24 | Q. | Did anyone ask you to fill out a Response to |

1       Resistance Report?
2   A.   No.
3   Q.   Did you ever at any point begin to prepare a
4       Response to Resistance Report for that evening?
5       Do you understand the question I'm asking?
6           MR. ASPLAND: Can we consult? You got a
7       question pending, it's up to you.
8   Q.   You're asking whether you can speak to counsel.
9       My question to you is: The question you're going
10      to ask counsel, does that involve something you
11      previously discussed with him?
12  A.   Yes.
13  Q.   Okay. You guys can talk.
14      (An off-the-record discussion was held.)
15          MR. TORCZYNER: Is there going to be an
16 answer to the question?
17          MR. ASPLAND: Yeah.
18      (The requested testimony was read back.)
19  A.   Yes.
20  Q.   Okay. Was that prepared manually, or on a
21      computer?
22  A.   Computer.
23  Q.   Where was that computer located?
24  A.   My house.

| | | |
|---|---|---|
| 1 | Q. | Had you ever completed a Response to Resistance |
| 2 | | Report on your home computer before? |
| 3 | A. | No. |
| 4 | Q. | Are you familiar with the concept of a VPN; have |
| 5 | | you ever heard that term before? |
| 6 | A. | Yes. |
| 7 | Q. | Does the City of Troy Police Department have VPN |
| 8 | | access to its computer systems? |
| 9 | A. | Do you mean for like remote access? |
| 10 | Q. | Yes. |
| 11 | A. | I don't know. |
| 12 | Q. | Okay. How would you complete a Response to |
| 13 | | Resistance Report on your home computer; is that |
| 14 | | a form that you have on your home computer? |
| 15 | A. | I would carry a thumb drive which has all of our |
| 16 | | forms on it; I can access them anywhere. |
| 17 | Q. | Where is the Response to Resistance Report that |
| 18 | | you started; is it still in existence? |
| 19 | A. | It still exists on my computer. |
| 20 | | MR. TORCZYNER: I'll make a request for it. |
| 21 | Q. | Your counsel and I will discuss that subsequently |
| 22 | | as far as your instructions, and you have -- you |
| 23 | | can speak to John about where to go with that. |
| 24 | DOCUMENT/INFORMATION REQUESTED: | |

| | | |
|---|---|---|
| 1 | Q. | The first page of this report, do you see that? |
| 2 | A. | Yes. |
| 3 | Q. | Did you complete that entire first page on the |
| 4 | | home computer? |
| 5 | A. | I don't know. |
| 6 | Q. | Approximately how long after the incident of |
| 7 | | April 17th, 2016, did you start to prepare the |
| 8 | | Response to Resistance Report? |
| 9 | A. | I don't remember. |
| 10 | Q. | Was it before or after you testified at the grand |
| 11 | | jury? |
| 12 | A. | After. |
| 13 | Q. | Was it more than a week after you testified at |
| 14 | | the grand jury? |
| 15 | A. | Yes. |
| 16 | Q. | Was it within the last month? |
| 17 | A. | From now? |
| 18 | Q. | Yeah. |
| 19 | A. | No. |
| 20 | Q. | Okay.  So at some point after the end of |
| 21 | | April 2016 and before June 2017? |
| 22 | A. | Yes. |
| 23 | Q. | Other than the Response to Resistance Report, |
| 24 | | have you prepared anything in typewritten form, |

1      computer typewritten form which records the
2      events that took place in your own words on
3      April 17th, 2016?
4  A.  Just a Supplemental Report that is required for
5      officers involved in motor vehicle accidents.
6  Q.  Where is that Supplemental Report?
7  A.  On my computer.
8  Q.  Did you complete that, or is that also in
9      process?
10  A.  In process.
11  Q.  Did you prepare that Supplemental Report in and
12      around the same timeframe that you started this
13      Response to Resistance Report?
14  A.  Yes.
15  Q.  Is that Supplemental Report completed, or is it
16      in process?
17  A.  In process.
18  Q.  Is anyone aware that you begun to prepare these
19      two reports?
20  A.  Mr. Safranko is.
21  Q.  Did Mr. Safranko give you -- I'm going to preface
22      my question with a statement; just please hear my
23      statement.  I don't want to know what he told
24      you --

Case 1:16-cv-01115-DJS   Document 49-1   Filed 12/21/17   Page 12 of 13
97
RANDALL FRENCH - 07/28/17

```
 1      A.    Okay.
 2      Q.    -- but I do want to know.  And my question is
 3            going to be whether he talked you to about it.
 4                  Do you understand the difference?
 5      A.    Yes.
 6      Q.    Did Mr. Safranko discuss with you your
 7            preparation of the Response to Resistance Report
 8            and the Supplemental Report that you just
 9            mentioned?
10      A.    We discussed the Response to Resistance Report.
11            I -- yes, we discussed both.
12      Q.    Has Mr. Safranko seen your draft Response to
13            Resistance Report and your draft Supplemental
14            Report?
15      A.    Yes.
16      Q.    Do you recall when he saw them?
17      A.    I emailed them to him.  And shortly after I
18            started them, and --
19      Q.    Again, I don't want to know anything he responded
20            to you.
21      A.    Okay.  And we talked shortly thereafter.
22      Q.    If you were to go home and look at your emails,
23            would you know the date of that email; do you
24            generally save your sent messages, or do you
```

AMF REPORTING SERVICES, INC.
518-982-1341
WWW.AMFREPORTING.COM

|   |   |   |
|---|---|---|
| 1 |    | delete them? |
| 2 | A. | I'm pretty sure I save them.  I don't make a |
| 3 |    | habit of deleting them, so it's possible. |
| 4 | Q. | And I'm not instructing what to do or not do with |
| 5 |    | anything.  You have two lawyers that can give you |
| 6 |    | legal advice.  I'm not one of them.  But to the |
| 7 |    | extent that you have not deleted that email, I'm |
| 8 |    | going to ask your counsel to ensure that it does |
| 9 |    | not get deleted. |
| 10 |   | MR. ASPLAND:  You're talking about the |
| 11 |   | communication between he and Mr. Safranko? |
| 12 |   | MR. TORCZYNER:  That's correct.  I'm not |
| 13 |   | asking for production of it; I'm asking for it to |
| 14 |   | be preserved.  And I would ask to leave a gap in |
| 15 |   | the transcript. |
| 16 | Q. | If you're capable of ascertaining the date when |
| 17 |   | that email was sent, if you could fill it in on |
| 18 |   | the gap in the transcript when it's given to you |
| 19 |   | to review. |
| 20 | A. | Okay. |
| 21 | Q. | Do you understand those instructions? |
| 22 |   | MR. ASPLAND:  I'll take that request under |
| 23 |   | advisement. |
| 24 |   | MR. TORCZYNER:  Fair enough. |