UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CINTHIA THEVENIN, individually, and as wife of EDSON THEVENIN, Decedent, and as Administratrix of the Estate of EDSON THEVENIN, and as mother and natural guardian of Infant N.T. and as mother and natural guardian of Infant Z.T,<br><br>  Plaintiff,<br><br> –against–<br><br>THE CITY OF TROY and SERGEANT RANDALL FRENCH,<br><br>  Defendants. | 15-cv-1073 (TJM/DJS)<br><br>PLAINTIFF'S SECOND DEMAND FOR THE PRODUCTION OF DOCUMENTS |

PLEASE TAKE NOTICE THAT, Plaintiff CINTHIA THEVENIN, individually, and as wife of EDSON THEVENIN, Decedent, and as Administratrix of the Estate of EDSON THEVENIN, and as mother and natural guardian of Infant N.T. and as mother and natural guardian of Infant Z.T. ("Plaintiff") by and through her attorneys hereby demands that Defendants provide complete responses pursuant to FRCP 34 to Plaintiff's Second Demand for Production of Documents, within thirty (30) days from the date of service hereof, setting forth in detail the following:

### INSTRUCTIONS AND DEFINITIONS

A.   All nouns contained herein should be interpreted in both the singular and the plural.

B.   Words "and" and "or" as they appear in this demand for discovery and inspection are intended to be interpreted synonymously and to both encompass the injunctive and the disjunctive.

C.      This demand for discovery and inspection is intended to be of a continuing nature. If defendants, or their counsel, should acquire additional information that would be responsive to this demand, they are required to promptly furnish such information to the undersigned attorney by way of supplemental responses.

D.      The term "communication" shall be given its widest possible interpretation and shall include, without limitation: recorded communications such as letters, memorandums, faxes, notices, tape recordings, e-mails, instant messages, text messages, social media messages (ie: Facebook, Twitter, Instagram, etc.) and oral communications such as telephone calls, meetings and any other conveyance or information.

E.      "Document" or "documents" means any written, typed, printed, recorded or graphic material, however produced or reproduced, of any type or description, regardless of origin or location, including, without limitation, the original and any non-identical copy, of all correspondence, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters, text messages, facsimile transmissions, electronic mail (including attachments), evaluations, charges, agendas, bulletins, brochures, manuals, schedules, books, accounts, ledgers, invoices, bills of lading, transcripts, newspaper clippings, or documents contained on social media websites (ie: Twitter, Facebook, Instagram, etc.) and all other writings or papers of any kind, and information stored in computers or other data storage or processing equipment, which are or were in your possession, custody or control, or are known by you to exist or have existed.

F.      For information regarding any document called for by this request that is claimed to be privileged, defendants shall identify each document by specifying its form, date, title, author and general subject matter; the names(s) of each person or entity to whom which the

document was delivered, mailed or in any other manner disclosed, the present custodian; and a statement of the ground or grounds upon which each such document is considered to be privileged from production.

G.  For information regarding oral communications called for by this discovery request as claimed to be privileged, defendants shall identify the name(s) of the person making the communication and the name(s) of the person(s) present while the communication was made, the date and place of the communication, and a statement of the ground or grounds upon which such oral communication is considered privileged from disclosure.

H.  In responding to this request, all requested documents in defendants' possession, custody or control are to be produced.  This includes documents presently in the possession, custody and control of defendants' attorney or investigators or any third party or parties to whom defendants have surrendered possession, custody or control, or who are acting on defendants' behalf, or who, upon defendants' request, would surrender possession, custody or control to defendants.

I.  If the defendants cannot produce a document after exercising due diligence to secure it, they shall so state in writing and shall produce whatever portion of said document it is possible to produce.  Plaintiffs shall specify in writing their inability to answer the remainder of the document request and shall state whatever information or knowledge defendants have concerning the document that they are unable to produce, including, but not limited to, the content of such document.  If any such document was, but no longer is, in the defendants' possession, custody or control, defendants shall state what disposition was made of such document, including, but not limited to, the present or last known custodian of such document.

J.  In the event that any document requested has been misplaced or lost, that document is to be identified in writing as follows: approximate date the document was misplaced or lost, the circumstances of it having been misplaced or lost, the last known person(s) who had custody of the document before it was misplaced or lost, and the content of the document.

K.  In the event that any document called for by this request has been destroyed, the document is to be identified in writing as follows:  Addresser, addressee, indicated or blind copies, date, subject matter, content, number of pages, attachments, exhibits, or appendices, all persons to whom the document was distributed, date of destruction, reason for destruction and the person who authorized the destruction of such document.

L.  Each request for document production contemplates the production of every document in its entirety, without abbreviation or expurgation.

M.  "Concerning" means and includes supporting, embodying, setting forth, relating to, referring to, responding to, alluding to, commenting on, in respect of, about, describing, regarding, discussing, showing, mentioning, analyzing, evidencing, reflecting, constituting or in any manner arising from or in connection with, including, but not limited to, documents or information upon which you rely or may rely on to support your claims on this case.

N.  "Relate(s) to" or "relating to" shall be construed in its broadest sense to require answers that directly or indirectly pertain to, embody, mention, reflect, describe, constitute, refer or evidence the subject of the Requests.

O.  The terms "you," "your," and "Defendants," refer collectively to defendants, the City of Troy, Sergeant Randall French and include, but are not limited to, their agents, employees, designees, assignees, representatives, attorneys, predecessors-in-interest, or persons or entities purporting to act on their behalf.

P.	When used herein the term "TPD" shall refer to the Troy Police Department, including but not limited to their agents, employees, officers, designees, staff, directors, assignees, representatives, attorneys, predecessors-in-interest, or persons or entities purporting to act on their behalf.  The term "French" shall refer to defendant Randall French and shall include, but is not limited to, his agents, designees, assignees, representatives, attorneys, predecessors-in-interest, or any persons or entities purporting to act on his behalf.

Q.	The term "Sears" shall refer to defendant Joshua Sears in his individual and official capacity and shall include, but is not limited to, his agents, designees, assignees, representatives, attorneys, predecessors-in-interest, or any persons or entities purporting to act on his behalf.  The term "Skinkle" shall refer to defendant Charles Skinkle in his individual and official capacity and shall include, but is not limited to, his agents, designees, assignees, representatives, attorneys, predecessors-in-interest, or any persons or entities purporting to act on his behalf.

R.	When used herein, the term "Plaintiff" shall refer to plaintiff, CINTHIA THEVENIN, in her capacity as: (1) the administrator of the estate of EDSON THEVENIN, (2) an individual Plaintiff and (3) in her capacity as maternal natural guardian of ZT and NT.  The term Plaintiff shall also include, her agents, designees, assignees, representatives, attorneys, predecessors-in-interest, or persons or entities purporting to act on her behalf. The terms "Edson" or "decedent" shall refer to Edson Thevenin.

S.	The term "Complaint" means the complaint filed on September 13, 2016.

T.	The term "Answer" means the answer filed on October 12, 2016.

**DEMAND FOR PRODUCTION OF DOCUMENTS**

16. Any appraisal/evaluations of Randall French prepared by Matthew Montanino during the period of January 1, 2014 through April 17, 2016. (Montanino Depo Tr. at pp.29-31).

17. Any and all bulletins or announcements read at roll call for the A shift/platoon which commenced at 11:30 PM on April 16, 2017 and/or 12:00 AM on April 17, 2016.

18. A copy of the Troy Police Department blotter for April 17, 2016. (Montanino Depo. Tr. at pp.69-70).

19. Any and all records in French's possession which demonstrate or otherwise refer to the dates that French worked for the North Greenbush Ambulance Corps. (French Depo. Tr. at pp. 62-63).

20. Any and all documents demonstrating the date that French was issued the OC spray which he carried while on duty on April 17, 2016.

21. Any and all documents demonstrating the expiration date for the OC spray which French carried while on duty on April 17, 2016.

22. Any and all documents which demonstrate the chain of custody for the OC spray which French carried after he finished his shift on April 17, 2016.

23. Any and all documents which relate to any test performed on the OC spray which French carried on April 17, 2016.

24. A copy of French's patrol notebook entries for April 17, 2016.

25. Any and all records maintained by the Defendants which demonstrate French's use of his Troy Police Department Mobile Data Terminal to check the license plate of the vehicle operated by Edson on April 17, 2016. (French Depo Tr. at 84-85).

26. Any and all results produced by French from the use of his Troy Police Department Mobile Data Terminal to check the license plate of the vehicle operated by Edson on April 17, 2016.

27. Any and all drafts of the Response to Resistance Report prepared by French on his home computer. (French Depo Tr. at pp.92-94).

28. Any and all documents referred to or reviewed by French in preparing the Response to Resistance Report demanded in Document Request #27.

29. Any and all documents maintained on French's "thumb drive" which refer or relate to the traffic stop and subsequent shooting of Edson on April 17, 2016. (French Depo Tr. at p.94).

30. Any and all "supplemental reports" prepared by French on his home computer. (French Depo Tr. at p.96).

31. Any and all documents referred to or reviewed by French in preparing the "supplemental report" demanded in Document Request #30.

32. Identify the date of the email in which French provided his counsel with a copy of the draft supplemental report and response to resistance report. (French Depo. Tr. at pp.97-99).

33. Any and all records of the health care treatment (excluding mental health or counseling) received by French as a result of the incident which occurred on April 17, 2016 involving Edson.

34. Authorizations for the release of records of the health care treatment (excluding mental health or counseling) received by French as a result of the incident which occurred on April 17, 2016 involving Edson.

35. Any and all records or results of the diagnostic testing performed on French (including but not limited to range of motion testing, manual muscle testing, x-rays or MRIs) as a result of the incident which occurred on April 17, 2016 involving Edson.

36. Authorizations for the release of records of the diagnostic testing (excluding mental health or counseling) received by French as a result of the incident which occurred on April 17, 2016 involving Edson.

37. Any and all records of treatment of Randall French during the period of April 16, 2014 though April 16, 2016 from the health care provider who prescribed French the Celexa prescription he was taking on April 17, 2016.

38. Authorizations for the release of records of treatment of Randall French during the period of April 16, 2014 though April 16, 2016 for the health care provider who prescribed French the Celexa prescription he was taking on April 17, 2016.

39. Any and all documents demonstrating the period that French was on medical leave from the Troy Police Department after April 17, 2016 involving Edson. (French Depo. Tr. at p.104).

40. The version of Troy Police Department General Order 0602 which was promulgated by the Troy Police Department to Troy Police Officers prior to the version dated April 11, 2016 and marked as Exhibit 11 at the French deposition. (French Depo Tr. at pp.199-201).

Dated: Lake Success, New York
      September 11, 2017

                                    **HARFENIST KRAUT & PERLSTEIN LLP**
                                    *Attorneys for Plaintiff*
                By:    _s/Neil Torczyner_____
                                    Neil Torczyner
                                    3000 Marcus Avenue, Suite 2E1

       Lake Success, New York 11042
       (516)355-9600

       **HACH & ROSE LLP**
       *Attorneys for Plaintiff*
By:   __s/Michael Rose_____
       Michael Rose
       185 Madison Avenue
       New York, NY 10016
       (212)779-0057