

**FitzGerald Morris
Baker Firth**
Attorneys & Counselors

Asish A. Nelluvely
*Associate Attorney*
aan@fmbf-law.com

January 2, 2018

***Via ECF Only***
Magistrate Judge Daniel J. Stewart
United States District Court
Northern District of New York
James T. Foley U.S. Courthouse
445 Boradway
Albany, NY 12207

Re:   Cinthia Thevenin v. City of Troy, et al.
        Docket No.:   1:16-cv-1115(NAM/DJS)
        Our File No.:   11166-0001

Dear Judge Stewart:

Please accept this correspondence as Defendants' Brief in opposition to Plaintiff's request for an Order: (1) compelling French to produce copies of reports which he prepared in connection with the April 17, 2016 incident and (2) requiring witnesses Christopher Parker ("Parker") and Brandon Galligan ("Galligan") to testify as to any statements made by French during a Troy Police Department ("TPD") "stress brief" session.

An Affidavit by Andrew Safranko, Esq. (hereinafter Safranko Aff.), Sgt. French's criminal defense attorney, is also enclosed herewith.

A. **The Response to Resistance Report, Supplemental Report, and Post Pursuit Report are subject to Attorney Work-Product and Attorney-Client Privilege because Sgt. French had prepared the Reports at the Direction of his Counsel in Relation to the Investigation Being Conducted by the Rensselaer County District Attorney's Office, the Troy Police Department (Criminal and Internal Affairs), and/or the New York State Attorney General's Office.**

Mr. Safranko, Sgt. French's criminal defense attorney with respect to the April 17, 2016 incident, spoke with Sgt. French on the night of the incident and directed him not to speak or provide any statement, written or oral, to anyone about the incident without Mr. Safranko being present. See, Safranko Aff. at ¶ 2. Mr. Safranko formally met with Sgt. French on the morning of April 18, 2016. Id.

Sgt. French was placed on medical leave immediately following the incident due to the physical injuries he sustained while Plaintiff's decedent, using his vehicle, pinned Sgt. French

against his patrol vehicle.[1] (Exhibit "A" at p. 104). Sgt. French was still on medical leave on the date of his deposition, one year later. Id. Even though TPD officers are required to complete certain forms following an incident as the one at issue, including a Response to Resistance Report, Supplemental Report, and Post Pursuit Report, as Sgt. French had been placed on medical leave following the incident, he did not prepare any report relating to the incident during the ordinary course of business in his capacity as a Police Officer with the Troy Police Department. See, Safranko Aff. at ¶ 3.

On or about April 25, 2016, Sgt. French prepared draft reports of the Response to Resistance Report, Supplemental Report, and a Post Pursuit Report. See, Defendants' Privilege Log appended as Exhibit "F" to Mr. Torczyner's Letter Brief. (Docket Entry No. 49). The reports were prepared by Sgt. French at the direction of Mr. Safranko. See, Safranko Aff. at ¶ 4. The reports were prepared in relation to Mr. Safranko's representation of Sgt. French and related to the investigation being conducted by the Rensselaer County District Attorney's Office, the Troy Police Department (criminal and Internal Affairs), and/or the New York State Attorney General's Office. Id. at ¶ 5. A draft of these reports were forwarded by Sgt. French to Mr. Safranko on or about April 26, 2016. See, Defendants' Privilege Log appended as Exhibit "E" to Mr. Torczyner's Letter Brief. (Docket Entry No. 49). These reports have not been filed with the Troy Police Department or any other agency. See, Safranko Aff. at ¶ 6.

It is well established that attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. U.S., 449 U.S. 383, 390 (1981).

In the instant matter, Mr. Safranko was retained by Sgt. French on the night of the incident at issue. Mr. Safranko then provided clear directions to his client not to provide any statements, written or oral, unless he was also present. Thereafter, Mr. Safranko directed Sgt. French to prepare draft reports of the Response to Resistance Report, Supplemental Report, and Post Pursuit Report, in relation to the investigation being conducted by the Rensselaer County District Attorney's Office, the Troy Police Department (criminal and Internal Affairs), and/or the New York State Attorney General's Office. As the Court held in Upjohn, attorney-client privilege exists to protect "the giving of information to the lawyer to enable him to give sound and informed advice." Therefore, the draft reports, which were prepared by Sgt. French at the direction of his attorney, in relation to the criminal investigation being conducted by various local and state agencies, are subject to the attorney-client privilege.

As these reports were neither prepared during the ordinary course of business nor filed with the Troy Police Department, they are not discoverable under the body of case law cited by Mr. Torczyner in his letter brief. (Docket No. 49). Mr. Torczyner notes that the District Courts of this Circuit have routinely ruled that accident or incident reports are not protected under the Attorney Work Product privilege, and cites to Willis v. Westin Hotel Co., 1987 WL 6155 (S.D.N.Y. Jan. 20, 1987), in support of his argument that Sgt. French's reports should be disclosed. Willis specifically provides that "[u]nder both New York law, and the Federal Rule,

---

[1] A copy of the relevant portions of Sgt. French's Deposition Transcript is attached hereto as Exhibit "A".

material prepared by non-attorneys in anticipation of litigation, such as accident reports and other investigative reports, is immune from discovery only where the material is prepared exclusively and in specific response to imminent litigation." Willis, 1987 WL 6155, at *1. As evidenced by Mr. Safranko's Affidavit, these reports were prepared by Sgt. French at the direction of his counsel, in relation to criminal investigations being conducted by local and State authorities, and were not prepared during the regular course of business or provided to the TPD as part of their investigative file.

This matter can also be distinguished from Snyder v. Winter, 159 F.R.D. 14 (W.D.N.Y. 1994), where the defendant's manager, on the day of an automobile accident, prepared an accident report in routine investigation of possible claim for coverage on liability policy. The Court reiterated that under New York law, accident reports to insurer are fully discoverable if they were prepared at least partially for business purpose other than preparation for litigation. In the matter at hand, the draft reports prepared by Sgt. French were not prepared for any business purpose, and were prepared exclusively at the direction of his criminal defense attorney in relation to criminal investigations being conducted by various local and State authorities.

Similarly, this matter can also be distinguished from Calabro v. Stone, 225 F.R.D. 96 (E.D.N.Y. 2004), which involves disclosure of insured's recorded statement to his insurance carrier to give notice of accident. The Court held that these statements were not protected from disclosure by attorney-client privilege, where there was no attorney-client relationship at time of statement, communication was not for purpose of obtaining legal advice or to persuade insurer to retain counsel to defend him, and there was no showing that communication was made with expectation that confidentiality would be maintained. Here, the attorney-client relationship commenced on the date of the incident. Sgt. French's communications with Mr. Safranko between the date of the incident and April 26, 2017, the date the draft reports were emailed to Mr. Safranko, were for the purpose of obtaining legal advice in the defense of any criminal investigation and/or prosecution. Furthermore, as Sgt. French had retained counsel on April 17, 2016, there was every expectation that his communication to Mr. Safranko would remain confidential. Given the foregoing, the draft reports are subject to the attorney work product privilege.

Like Calabro, Vessalico v. Costco Wholesale Warehouse, 2016 WL 3892403 (E.D.N.Y. July 14, 2016) involved disclosure of an accident report prepared by Costco following an accident and sent to their Legal Department. The Court noted that an accident report is not protected from disclosure where it is "clear from the nature of the document that it was prepared as part of the regular procedure of the defendant when incidents such as the one here occur." Id. at *2 (citing, Danza v. Costco Wholesale Corp., No. 11-CV-4306, 2012 WL 832289, at *2 [E.D.N.Y. Mar. 12, 2012]). Although "litigation often ensues when persons are injured in commercial premises such as those operated by the defendant ... that alone is not sufficient to transform the document from one prepared in the ordinary course of the defendant's business to one prepared in anticipation of litigation." Id. The reports at issue here were not prepared during the regular course of business, as Sgt. French had been placed on medical leave immediately following the incident and did not return to work to complete any reports. The

reports were prepared exclusively at the direction of Sgt. French's criminal defense attorney, and therefore, subject to the attorney work product privilege.

Each of the remaining cases cited by Mr. Torczyner in support of his argument that Sgt. French's reports should be disclosed, can also be distinguished based on the fact that the reports at issue in each case were prepared during the ordinary course of business, not at the direction of legal counsel. See, e.g., Mercy v. Suffolk Cty., 93 F.R.D. 520, 522 (E.D.NY. 1982) (ordering disclosure of internal affairs reports prepared in the ordinary course of business); Thompson v. Keane, 1996 WL 125659, at *1 (S.D.N.Y. Mar. 20, 1996) (ordering disclosure of unredacted copies of the investigation file made in the course of a completed investigation by the State Inspector General's investigations into the incident, where Defendants had asserted "informer's privilege" to prevent disclosure of the unredacted investigation file); Morissey v. City of New York, 171 F.R.D. 85, 92 (S.D.N.Y. 1997) (Defendants asserted "official information privilege" in seeking to prevent disclosure of certain reports that had been prepared during the ordinary course of an investigation); Burke v. New York City Police Dep't, 115 F.R.D. 220, 228 (S.D.N.Y. 1987) (ordering the disclosure of certain personnel records and investigatory files relating to a gender-discrimination lawsuit, all of which appear to have been prepared during the ordinary course of business and not at the direction of counsel).

Given the foregoing, this Court should deny Plaintiff's request for an Order compelling the disclosure of draft reports that had been prepared by Sgt. French, at the direction of his counsel, and exclusively in relation to the criminal investigation being conducted by various local and state agencies, as they are subject to both attorney work-product and attorney-client privilege.

**B. None of the Police Officers Present During the Peer Counseling Session ("Stress-Brief Session") Should be Required to Testify About Communications Made by any of the Officers during this Session as Such Communications were Made by the Officers with an Expectation of Privacy.**

The purpose of General Order No. 03.26 regarding Peer Support Services is "[t]o provide emotional support during and after times of personal or professional crisis to employees and their family members who express a need for assistance." See, General Order No. 03.26 at p. 1, appended as Exhibit "I" to Mr. Torczyner's Letter Brief. (Docket Entry No. 49). The General Order specifically provides that "[d]iscussions that take place involving peer services session shall be considered confidential between the parties." Id. at p. 3. Further, Peer Support Team ("PST") personnel is required to "advise department members of the confidentiality policy as stated herein prior to the start of each meeting." Id. at p. 4. Therefore, every officer that took part in the peer counseling session following the incident at issue, did so with the expectation that any communications made during the session would be considered confidential between the parties.

The expectation of confidentiality during peer support counseling sessions is not a novel concept. See, Oleszko v. State Compen. Ins. Fund, 243 F.3d 1154, 1158 (9th Cir. 2001) ("Although the majority of state legislatures have yet to create a specific privilege for the

confidential communications to EAP counselors, a number of states have begun to recognize such a privilege.") For example, in the State of Oregon, "[a]ny communications made by a participant or counselor in a peer support counseling session conducted by a law enforcement agency or by an emergency services provider for public safety personnel or emergency services personnel, and any oral or written information conveyed in the peer support counseling session, is confidential and may not be disclosed by any person participating in the peer support counseling session." Or. Rev. Stat. Ann. § 181A.835 (West).

Although, the New York State legislature has yet to create a specific privilege for the confidential communications in peer support counseling sessions, this Court should weigh the limited public benefit of disclosing communications made during a peer counseling session, against the legitimate expectation of confidentiality by officers that participate in such sessions, in determining whether or not to compel any of the Police Officers that had been present during the peer counseling session to testify about communications made by a fellow Officer. If the Court decides to compel such disclosure, it may have a chilling effect on such vital services that assist in the mental wellbeing of Police Officers following a traumatic event, such as the officer involved shooting at issue, as officers would likely be hesitant to take part in these very important services as they would have no guarantee that their communication would be kept confidential.

Plaintiff's counsel has deposed Sgt. French, as well as all of the TPD officers who had responded to the scene, and/or investigated the incident. Further, counsel is also in possession of the TPD investigative file related to this matter, which includes a witness statement provided by Sgt. French to the investigating officers, made on April 21, 2016, four days after the incident at issue. Counsel has had ample opportunities to obtain information regarding the incident directly from Sgt. French through interrogatories, requests for production of documents, and depositions. Therefore, there is no legitimate reason to interrupt the expectation of confidentiality of peer counseling sessions, thereby risking a chilling effect on future peer counseling efforts by the Troy Police Department, or indeed any other Police Department in this State, in order to obtain information that is already in Plaintiff's possession.

For the foregoing reasons, it is respectfully submitted that the Court should deny Plaintiff's letter motion seeking the disclosure of any portion of the confidential communication made by any of the officers present during the peer counseling session at issue.

Additionally, if Plaintiff's motion to compel disclosure is granted, it is respectfully submitted that the Court should deny Plaintiff's request to be heard and/or submit papers as to the payment of Plaintiff's costs and attorney's fees in support of their application, if the Court also finds that the Defendants' objections to the disclosure was substantially justified. Fed. R. Civ. Proc. R. 37(5)(A)(iii).

Respectfully submitted,

*/s/ Asish A. Nelluvely*

Asish A. Nelluvely

Encl.

cc: Michael A. Rose, Esq., Hach & Rose LLP *(via ECF only)*
    Neil S. Torczyner, Esq., Harfenist Kraut & Perlstein LLP *(via ECF only)*