**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CINTHIA THEVENIN,

                                          Plaintiff,

                    - v -                                        Civ. No. 1:16-CV-1115
                                                                          (DJS)
CITY OF TROY, *et al.*,

                                          Defendants.

**APPEARANCES:**                                  **OF COUNSEL:**

HACH & ROSE, LLP                                 MICHAEL A. ROSE, ESQ.
Attorneys for Plaintiff
185 Madison Avenue, 14th Floor
New York, NY 10016

HARFENIST KRAUT &                                STEVEN J. HARFENIST, ESQ.
PERLSTEIN LLP                                    NEIL S. TORCZYNER, ESQ.
Attorneys for Plaintiff
3000 Marcus Avenue, Suite 2E1
Lake Success, NY 11042

FITZGERALD MORRIS BAKER                          JOHN D. ASPLAND, ESQ.
FIRTH, P.C.                                      MICHAEL A. BRANDI, ESQ.
Attorneys for Defendants
16 Pearl Street
P.O. Box 2017
Glens Falls, NY 12801

HON BARBARA D. UNDERWOOD                         ADRIENNE J. KERWIN, ESQ.
Attorney General of the State of New York        Assistant Attorney General
Attorney for AAG Sommers
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION & ORDER

The facts of this case are well known to the Court.  On April 17, 2016, Edson Thevenin was killed along Sixth Avenue in Troy, New York, as a result of an officer-involved shooting.  Dkt. No. 1, Compl., at ¶¶ 25-42.  A civil rights lawsuit was then commenced by Cinthia Thevenin, both individually and as Administratrix of the Estate, alleging violations of Mr. Thevenin's constitutional rights, as well as State law claims of assault and wrongful death.  *Id*.

Presently before the Court are three separate discovery Motions.  First, counsel for the Attorney General's office has filed a request to quash the subpoena issued by Defendants' counsel seeking the deposition of Assistant Attorney General Jennifer M. Sommers.  Dkt. No. 81.  Plaintiff takes no position on this Motion, Dkt. No. 85, and Defendants have opposed it.  Dkt. No. 89.  Next, counsel for Defendants seeks an order from the Court compelling the Attorney General's Office to comply with a subpoena for the production of documents that have been withheld.  Dkt. No. 82.  Plaintiff takes no position on this Motion, Dkt. No. 86, and the Office of the Attorney General has opposed it.  Dkt. No. 91.  Finally, counsel for Defendants seeks an order from the Court requiring the production, or delivery to the Court for an *in camera* review, of grand jury testimony in connection with the investigation of Rensselaer County District Attorney Joel Abelove.  Dkt. No. 83. The Attorney General's Office opposes this Motion.  Dkt. No. 91.  Plaintiffs' counsel joins in the request only to the extent it seeks the Court's review of those records.  Dkt. No. 87.  The

*-2-*

Court has heard oral argument in connection with all of the various requests, and hereby concludes that the Motion to Quash should be **granted**, and that the Defendants' Motion to Compel and for Production of the Grand Jury Testimony should be **denied.**

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to its proper ambit, and to create a balance between the need for evidence and the avoidance of undue burden or expense. The December 2015 Amendments to Rule 26 now define the scope of discovery to consist of information that is relevant to a "claim or defense" of the parties and that is "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The specific proportionality factors to be assessed when considering the scope of discovery are: (1) the importance of the issues at stake in the litigation; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the discovery is outweighed by the benefit. FED. R. CIV. P. 26(b).

Enveloping the interpretation of Rule 26 is the general standard set forth in Rule 1. That Rule, as amended in December of 2015, requires that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1; *see also* FED. R. CIV. P. 1, Advisory Committee's Note to 2015 Amendment (noting that "the parties share the responsibility" to employ the rules consistently with the

standards of Rule 1, and that "[e]ffective advocacy is consistent with – and indeed depends upon – cooperative and proportional use of procedure"). As a result of this 2015 change in the Federal Rules, Defendants' reliance on older case law describing the expansive scope of discovery, *see* Dkt. No. 89-15 at p. 3, is misplaced.

Turning first to the deposition of nonparty attorney Jennifer Sommers, it is important to place Defendants' request in some context. After the death of Edson Thevinin, the New York State Attorney General's Office conducted an investigation into this use of deadly force by City of Troy Sergeant Randall French. The result of that extensive investigation culminated in a detailed report entitled "Report on the Investigation into the Death of Edson Thevenin." With exhibits, that Report was well over 200 pages in length. Dkt No. 81-4. In addition to having access to the Report, counsel for the City of Troy Defendants have also deposed certain witnesses identified in the report, as well as three investigators from the Office of the Attorney General who were involved in the collection of evidence. What is more, and as noted hereafter, the Attorney General's Office has provided over 1600 additional pages of discovery in connection with their investigation. Dkt. No. 81-1, Kerwin Aff'm. at ¶ 13.

According to Attorney Sommers, she was employed at the relevant time in the Attorney General's Office as the Deputy Bureau Chief of Special Investigations and Prosecutions, but she was not present at the scene of the Thevenin incident on April 16, 2016, nor did she take any written statements from any witnesses to the Thevenin incident.

Dkt. No. 81-3, Sommers Decl. in Support of Motion to Quash, at ¶¶ 12-13.   Rather, her duties were primarily to assess evidence, communicate with the other Assistant Attorneys General and to make decisions with regard to the prosecution of the matter.  *Id.* at ¶¶ 8, 14. Finally, she was also involved in the investigation of Rensselaer County District Attorney Joel Abelove, which investigation resulted in charges being filed by the Rensselaer County Grand Jury, and which case is still pending.  *Id.* at ¶ 19.  In sum, AAG Sommers indicates that there has been substantial compliance with the discovery requests of defense counsel, and she does not possess any relevant first-hand factual information other than what is included in the file that has already been produced.  *Id.* at ¶¶ 17-18.  She also maintains any involvement in her investigation or prosecution of District Attorney Abelove would be irrelevant to the Thevenin matter.  *Id.* at ¶19.

Defense counsel maintains that the Sommers deposition is relevant.  In particular counsel points out that Attorney Sommers was present when the witness Philip Gross testified, or at least at the beginning of that testimony; that she was present at a number of meetings in which the evidence in the Thevenin case was discussed; that she spoke to the Thevenin family prior to the release of the report; that she may have been present at the examination or inspection of the Thevenin vehicle; and that she supervised the investigation. Dkt. No. 89-15, Defs' Mem. of Law at p. 4.  Considering the arguments presented, I conclude that the deposition that is sought does not satisfy the proportional relevance standard, and accordingly I grant the Motion to Quash the subpoena.  Defense counsel has

already received substantial evidence concerning the Attorney General's investigation, including the final report.  In addition, they have also received witness statements, thousands of pages of backup information, and have, through the discovery process, been able to depose individual witnesses such as Mr. Gross.  Further, it is anticipated that the parties will, or may, depose the expert retained by the State of New York.  An additional deposition centered upon another attorney's opinion about what the evidence may or may not show, or the internal workings of the Attorney General's deliberative process, is simply not warranted.   In addition, and for the reasons set forth in this Court's decision in *Cannon v. Corr. Med. Care, Inc.*, 2017 WL 2790531 (N.D.N.Y. June 27, 2017), I am also concerned with regard to the practical effects of requiring an attorney who conducts an independent investigation of an incident, to then be the subject of extensive depositions concerning their analysis or thought process.  "[I]f high ranking officials, such as the head of a government agency, were routinely deposed, he or she would be 'spending their time giving depositions and would have no opportunity to perform their functions.'" *Id.* at *5 (quoting *Marisol A. v. Giuliani*, 1998 WL 132810, at *3 (S.D.N.Y. March 23, 1998)).  Such a deposition is certainly not warranted where, as here, counsel has had the opportunity to speak directly with those who have the first-hand information.

For similar reasons, I am denying Defendants' Motion to Compel production of internal communications that predate the final report.  As noted above, the Attorney General's Office has supplied a multitude of documents regarding their investigation into the

Thevenin matter. Included in this response was communications between the Office of Attorney General and Plaintiff's attorney as well as Defendants; laboratory reports; maps; autopsy reports; photographs; photo logs; precision simulations reports; call sheets from the Rensselaer County 911 Communications Center; witness statements; the Troy Police Department file; the Troy Fire Department file; video recordings; and redacted ACISS reports. What has not been supplied, however, are email and memoranda between and among members of the Office of the Attorney General, which are said to involve fifteen employees for a period of two and one half years, and implicate the deliberative process, evaluation of evidence, and work product. Dkt. No. 91-3, Sommers Decl. in Opposition to the Motion to Compel, at ¶¶ 36-39. For the reasons detailed above, I conclude that the information sought is not proportionally relevant to the needs of this particular case and therefore I will not require its production. Again, the analysis of those in the Attorney General's Office concerning the facts of its investigation, or their opinions concerning credibility, simply are not the proper focus of this case. Ultimately it will be the jury's determination of the credibility of the factual witnesses and the evidence that controls. In the Court's view, it is not a proper use of the attorney's time or the Court's efforts to go down the road of inquiring what the third parties' view of the case was.

Defendants strongly argue that any privilege concerning work product or the attorney-client relationship has been waived by the failure of the Attorney General's Office to produce a privilege log. The rules in this district require that a party withholding a

document on the basis of privilege provide complete identifying information, date, type of document, and subject matter, and not merely assert "generalized claims of privilege." N.D.N.Y. L.R. 7.1(d)(7).  Withholding privileged materials without including the material in a privilege log "may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26 Advisory Committee Notes; *see also Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir.1992) (noting that failure to comply with the privilege log requirement of former Local Rule 46(e)(1) may result in a finding that the privilege has been waived).  It has been observed that "[o]nly 'flagrant' violations of these rules should result in a waiver of privilege." *Perm–America, Inc. v. Sunham Home Fashions, LLC,* 2007 WL 3226156, *2 (S.D.N.Y. Oct. 31, 2007).  Whether waiver is warranted, of course, depends on such factors as "the length of the delay, the willfulness of the transgression, and the harm to other parties." *Schiller v. City of New York,* 245 F.R.D. 112, 118 (S.D.N.Y. 2007).

In the present case, the Court finds no such willful and flagrant violation. The record adequately reflects that counsel for the Attorney General's Office has been extremely forthcoming with documentation. The issues with regard to privilege, while not technically raised in a privilege log, were identified as a concern early on by way of email communication.  There was also a concern regarding the significant burden of having to prepare such a log for thousands of individual communications, as the demand was for "any and all" communications.  *See* Sommers Decl. in Opposition to Motion to Compel, at ¶¶ 36-44.  The parties attempted to resolve those issues, but were ultimately unsuccessful, and the

present Motion was then filed.  Accordingly, I find no waiver.  However, to be clear, the Court's ruling is that the evidence sought is not proportionally relevant to the needs of this case, and therefore the ultimate issue of privilege is not reached.

Finally, the Court addresses Defendants' request for production of the Abelove Grand Jury Transcripts. The issue of the production of grand jury transcripts as part of the discovery process in a federal civil rights action was discussed at length in my prior decision, in which I granted access to Thevenin Grand Jury testimony, and it will not be repeated here. Dkt. No. 69 and Text Order 76.  In the Court's view, however, the reasons articulated by defense counsel for their need to view the transcripts of a case (*People v. Abelove*) which was premised upon conduct that is factually independent of the actual Thevenin incident, to wit: the Rensselaer County District Attorney's conduct in his presentation of facts to a state grand jury, are wholly speculative and insufficient to justify unsealing and production, even for an *in camera* review.  *United States v. Ulbricht*, 858 F.3d 71, 106-107 (2d Cir. 2017) (to be entitled to disclosure of grand jury proceedings, a defendant must show a particularized need that outweighs the strong government and public policy interests in the secrecy of grand jury proceedings).  What is more, that criminal matter is still pending in the courts, and the subject of that investigation is not even a party to the present action.  Insofar as witness testimony before the state grand jury regarding the actual events of the Thevenin shooting is relevant, that testimony has already been provided by the Court's previous order.  In the Court's view, what is being sought now by the extraordinary process of disclosing grand jury testimony,

is at most extremely tangential to the core of this excessive force case.  Therefore, exercising the authority that this Court has to control the conduct of discovery, and to keep the matter headed towards a speedy, just, and inexpensive determination, I deny the request to unseal.

Accordingly, it is hereby

**ORDERED**, that the Motion to Quash of the New York State Attorney General (Dkt. No. 81) is hereby **GRANTED**, and it is further,

**ORDERED**, that the Motion to Compel by the City of Troy Defendants (Dkt. No. 82) is hereby **DENIED**, and it is further,

**ORDERED**, that the Letter Motion to Unseal the Abelove Grand Jury Testimony (Dkt. No. 83) is hereby **DENIED**.

**SO ORDERED**.

Date:   October 25, 2018
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

*-10-*