

**FitzGerald Morris Baker Firth**
Attorneys & Counselors

John D. Aspland, Jr.
*Partner*
jda@fmbf-law.com
Bar Roll No. 512134

January 8, 2019

*<u>Via ECF Only</u>*
Magistrate Judge Daniel J. Stewart
United States District Court
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

Re:   Cinthia Thevenin v. City of Troy, et al.
      Docket No.: 1:16-cv-1115(NAM/DJS)
      Our File No.: 11166-0001

Dear Magistrate Stewart:

In accordance with the Court's direction following the January 4, 2019 telephone status conference, please accept this correspondence as Defendants' letter brief opposing Plaintiff's request that the bullets be released to Plaintiff's Expert's custody in order that certain unidentified testing be conducted on the bullets.

Pursuant to F.R.C.P. Rule 34, a party may serve on another party a request for inspection of a tangible item within the scope of Rule 26(b) which must, relevant here, specify a reasonable time, place and manner for the inspection and for performing of the related acts. Plaintiff has requested that the bullets and shell casings be released to the custody of Plaintiff's expert in order that certain unspecified, non-destructive testing can be performed.

Defendants oppose Plaintiff's request based on the considerations at play in managing the chain of custody of evidence which has been involved in a death and may be needed in investigations both ongoing and contemplated.

"Whether to permit, pursuant to Fed.R.Civ.P. 34(a), testing, whether 'destructive' or 'non-destructive,' 'rests within the sound discretion of the court,' <u>Ramos v. Carter Express, Incorporated</u>, 292 F.R.D. 406, 408 (S.D.Tex.2013) (quoting <u>Ostrander v. Cone Mills, Inc.</u>, 119 F.R.D. 417, 419 (D.Minn.1988)). In exercising such discretion, courts 'balance the respective interests by weighing the degree to which the proposed inspection will aid in the search for the truth against the burdens and dangers created by the inspection.' <u>Id.</u>" <u>Gross v. Lunduski</u>, 304 F.R.D. 136, 158 (W.D.N.Y. 2014).

SERVICE BY FAX NOT ACCEPTED

Glens Falls Office: 16 Pearl Street, P.O. Box 2017, Glens Falls, NY 12801  |  Hudson Falls Office: 3019 State Route 4, Hudson Falls, NY 12839
Cambridge Office: 49 West Main Street, Cambridge, NY 12816  |  Salem Office: 190 Main Street, Salem, NY 12865
Phone: 518.745.1400  |  Fax: 518.745.1576  |  www.fmbf-law.com

Here, the considerations outlined in Gross clearly militate towards the Court requiring that any testing desired by Plaintiff take place while the bullets are in the custody of the City of Troy Police Department. Plaintiff, aside from indicating that the testing will be "non-destructive" has not identified what will be done with the bullets and has further not indicated for what purpose testing is being conducted or what "truth" is thereby being pursued. With no factors identified by Plaintiff which will "aid in the search for truth," the Court should be especially cognizant of the burdens and dangers which would be created by the release of the bullets to Plaintiff's expert for testing.

Specifically, as custodian of the bullets, the Troy Police Department must be especially sensitive of the preservation of the evidentiary value of the bullets for now ongoing and potential future investigations.

New York Courts require that in order for bullet fragments to be admitted to evidence, that a proper chain of custody must be established. A proper chain of custody is demonstrated "by reasonable assurances in the record that the evidence sought to be admitted is the same item as was used in the crime and that it is unchanged. As long as these assurances have been established, any deficiencies in the chain of custody go only to the weight to be given to the evidence. People v. Alomar, 55 A.D.3d 617, 618, 865 N.Y.S.2d 311 (2d Dept. 2008) quoting People v. Donovan, 141 A.D.2d 835, 837, 530 N.Y.S.2d 174 (1988).

In Alomar, the Officer who removed the bullets from the complainant's vehicle gave testimony that the bullet fragments admitted at trial were the same which he had recovered from the vehicle, however, the fact that the bullets were handled by individuals who were not called upon to testify affected the weight to be accorded to the evidence. Here, the bullets would be handled by an unknown chain of individuals while in custody of Plaintiff's expert. Such a rift in the chain of custody would jeopardize any evidentiary value currently imbued in the bullets.

Addressing an analogous set of circumstances, the Northern District of West Virginia held that Defendant's request to be present for and observe testing of medical devices which were actually implanted in and later removed from Plaintiff was proper and that such a circumstance "necessitates additional care and safeguards."

In considering a plaintiff's request to inspect bullets relevant to a dispute between the parties as to the amount of shots that were fired during a shooting, the Southern District of New York held that plaintiffs are entitled to examine the bullets, but emphasized that the inspection of the bullets would take place at the police department under the supervision of defendants and their counsel. Fletcher by Fletcher v. City of New York, No. 84 CIV. 1376 (IBC), 1988 WL 13770, at *5 (S.D.N.Y. Feb. 16, 1988).

Here, Defendants have offered to make the bullets available at a laboratory in the Albany Area in order that Plaintiff may conduct non-destructive testing in the presence of a representative of the Troy City Police Department. In the alternative, Defendants have offered to have the bullets delivered to Plaintiff's expert by an evidence technician with Plaintiff being responsible for the associated costs.

Having an evidence technician deliver the bullets and be present for any testing would preserve the chain of custody and allow the Troy Police Department to maintain the evidentiary value of the bullets without relying on testimony of Plaintiff's expert or whoever else may handle the bullets in order to establish the chain of custody and ensure the weight of the evidence is not diminished.

However, the use of an evidence technician to deliver and observe any testing would require the utilization of scarce municipal resources, which poses a burden to Defendant which further shifts the balance in Defendants' favor.

Per the Telephone Conference, if the Court were to shift the cost of the evidence technician to Plaintiff based on Plaintiff's request to have the evidence inspected at an alternate location, the rate for an evidence technician on the day shift is $52.34 per hour and the mileage rate is the Federal rate of $.58 cents per mile.

For the foregoing reasons, it is respectfully submitted that the Court should deny Plaintiff's request to have the bullets transferred to the custody of his expert in order that certain testing be performed. The potential damage which would result from lost or damaged evidence as well as the legal ramifications to an eroded chain of custody strongly weighs in favor of any testing being performed while the bullets are in the custody of Defendant. In the alternative, many of the evidentiary concerns are mitigated by the bullets being delivered to Plaintiff's expert by an evidence technician and any testing being done in their presence. However, such an approach would pose a significant financial burden on the limited municipal resources of Defendant, so it is respectfully submitted that equity and fairness demands that Plaintiff be responsible for any such costs at the rates detailed above.

Very truly yours,

John D. Aspland, Jr.
JDA/mab