UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

CINTHIA THEVENIN, individually, and as wife of Edson
Thevenin, Decedent, and as Administratrix of the Estate of
Edson Thevenin, and as mother and natural guardian of Infant
N.T. and as mother and natural guardian of Infant Z.T.,

                                        Plaintiffs,

        -against-

THE CITY OF TROY, and SERGEANT RANDALL
FRENCH,

                                        Defendants.
———————————————————————————

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION PURSUANT TO
FRCP RULE 56**

Civil No. 1:16-CV-1115 (DJS)

Respectfully submitted,

FitzGerald Morris Baker Firth PC
Attorneys for Defendants
16 Pearl Street
P.O. Box 2017
Glens Falls, New York 12801
(518) 745-1400

i

## TABLE OF AUTHORITIES

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .................................................. 8

Ashcroft v. al-Kidd, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ......................... 17

Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d
    626 (1997) ..................................................................................... 19, 22, 23

Breitkopf v. Gentile, 41 F. Supp. 3d 220, 247 (E.D.N.Y. 2014) .................................................. 25

Brosseau v. Haugen, 543 U.S. 194, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) ................ 15, 16, 17

Cannon v. Wood, No. 9:10-CV-01332 GTS, 2013 WL 838299 (N.D.N.Y. Jan. 22, 2013), report
    and recommendation adopted, No. 9:10-CV-1332 GTS/RFT, 2013 WL 838294 (N.D.N.Y.
    Mar. 6, 2013) ..................................................................................... 14

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) .......... 25

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ......................................................... 8, 9

City & Cty. of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1777, 191 L. Ed. 2d 856
    (2015). ..................................................................................... 3

City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ... 19, 20

City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 504 (2019) ........................................... 14, 15

City of St. Louis v. Praprotnik, 485 U.S. 112 (1985) ......................................................... 19

Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) ........................ 18

Costello v. Town of Warwick, 273 F. App'x 118, 119 (2d Cir. 2008) ........................................... 17

Cummins v. Cty. of Onondaga, 84 N.Y.2d 322, 324, 642 N.E.2d 1071, 1072 (1994) ................. 25

DeCarlo v. Fry, 141 F.3d 56 (2d Cir. 1998) ......................................................... 19

Disla v. New York, 117 A.D.3d 617 (1st Dep't 2014) ................................................................. 24

Eberts v. Makarczuk, 52 A.D.3d 772, 772–73, 861 N.Y.S.2d 731, 732 (2d Dept. 2008) ............ 24

Fiederlein v. New York City Health & Hosps. Corp., 56 N.Y.2d 573, 435 N.E.2d 398 (1982) .. 25

Fortunati v. Campagne, 681 F. Supp. 2d 528, 536 (D. Vt. 2009) ................................................... 10

Graham v. City of New York, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) ................................ 24

Graham v. O'Connor, 490 U.S. 386 (1989) ......................................................... 10

Green v. City of Mt. Vernon, 96 F. Supp. 3d 263 (S.D.N.Y. 2015) ................................................. 24

Hinton v. Prack, No. 9:12-CV-1844 LEK/RFT, 2014 WL 4627120 (N.D.N.Y. Sept. 11, 2014) 14

Humphrey v. Landers, 344 Fed. App'x 686, 688 (2d Cir. 2009) ................................................... 24

Jamison v. Metz, 541 F. App'x 15, 20 (2d Cir. 2013) ......................................................... 2

Jenkins v. Medert, No. 916CV1491MADDJS, 2018 WL 4328823(N.D.N.Y. Sept. 11, 2018),
    reconsideration denied, No. 916CV1491MADDJS, 2018 WL 5283872 (N.D.N.Y. Oct. 24,
    2018) ..................................................................................... 15

Jones v. Smithkline Beecham Corporation d/b/a Glaxo Smith Kline, 309 F.Supp.2d 343
    (N.D.N.Y. 2004) ..................................................................................... 9

Jones v. Town of E. Haven, 691 F.3d 72 (2d Cir. 2012) ......................................................... 18

Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004) ......................................................... 14

Kisela v. Hughes, 138 S. Ct. 1148, 200 L. Ed. 2d 449 (2018) ...................................................... 13

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) ............................................................................... 10

Liggins v. City of Utica, No. 6:14-CV-446, 2014 WL 7346041 (N.D.N.Y. Dec. 23, 2014) ....... 19

Marcano v. City of Schenectady, 38 F. Supp. 3d 238 (N.D.N.Y. 2014) .................................. 2, 24

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ..................................... 9

Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d
     611 (1978) ................................................................................................................... passim

Mullenix v. Luna, 136 S. Ct. 305, 310, 193 L. Ed. 2d 255 (2015) ............................................... 17

Outlaw v. City of Hartford, 884 F.3d 351 (2d Cir. 2018)............................................................. 18

Peguero v. City of New York, No. 12-CV-5184 JPO, 2015 WL 1208353, at *8 (S.D.N.Y. Mar.
     17, 2015)................................................................................................................. 11, 12, 13

Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)............ 19

Plumhoff v. Rickard, 572 U.S. 765, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014) ............... passim

Pub. Adm'r of Queens Cty. ex rel. Estate & Beneficiaries of Guzman v. City of New York, No.
     06 CIV. 7099, 2009 WL 498976, at *13 (S.D.N.Y. Feb. 24, 2009) ......................................... 25

Rodriguez v. Phillips, 66 F.3d 470 (2d Cir. 1995)........................................................................ 14

Salhuddin v. Goord, 467 F.3d 263 (2d Cir. 2006) ....................................................................... 14

Salim v. Proulx, 93 F.3d 86 (2d Cir. 1996)................................................................................... 10

Saucier v. Katz, 533 U.S.194 (2001) ............................................................................................ 13

Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009) .............................................................. 9

Stephenson v. Doe, 332 F.3d 68 (2d Cir. 2003) ..................................................................... 13, 15

Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985) ............................... 2, 10

Tieman v. City of Newburgh, No. 13-CV-4178 KMK, 2015 WL 1379652 (S.D.N.Y. 2015) ..... 22

Tracy v. Freshwater, 623 F.3d 90 (2d Cir. 2010) ........................................................................ 10

Veline Hicks v. The City Of Syracuse, David Craw, & David Hart, No. 5:17-CV-0475, 2018 WL
     6308653 (N.D.N.Y. Dec. 3, 2018) ................................................................................. 19, 22

White v. Pauly, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) ...................................................... 13, 14

Woodward v. Town of Brattleboro, 148 F. App'x 13, 14 (2d Cir. 2005) ..................................... 10

Zikianda v. Cty. of Albany, No. 1:12-CV-1194, 2015 WL 5510956, at *60 (N.D.N.Y. Sept. 15,
     2015)........................................................................................................................................ 24

**STATUTES**

EPTL §5-4.1............................................................................................................................... 25

New York Penal Law § 35.30............................................................................................... 2, 3, 24

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ............................................................…..…….... 3

ARGUMENT ...............................................................................…..….. 8

    I.     LEGAL STANDARD FOR SUMMARY JUDGMENT ........................... 8

    II.    THE EXCESSIVE FORCE AND DUE PROCESS CLAIM
           PURSUANT TO 42 USC §1983 MUST FAIL AS A MATTER
           OF LAW BECAUSE THE FORCE USED WAS OBJECTIVELY
           REASONABLE, PROPORTIONAL AND NECESSARILY
           SUFFICIENT TO OVERCOME THE THREAT TO SERGEANT
           FRENCH'S LIFE POSED BY THEVENIN'S UTILIZATION OF
           HIS VEHICLE AS A WEAPON……………………………….................. 9

    III.   PLAINTIFFS CANNOT OVERCOME DEFENDANTS'
           ENTITLEMENT TO QUALIFIED IMMUNITY………………………… 13

    IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
           AS A MATTER OF LAW ON PLAINTIFFS' CLAIMS THAT
           DEFENDANT CITY DEPRIVED HIM OF HIS CONSTITUTIONAL
           RIGHTS PURSUANT TO AN OFFICIAL CUSTOM, POLICY,
           OR PRACTICE OF THE CITY OF TROY……………………………………18

    V.    PLAINTIFFS' PENDANT NEW YORK STATE LAW CLAIMS
           FOR ASSAULT AND BATTERY, CONSCIOUS PAIN AND
           SUFFERING AND WRONGFUL DEATH MUST BE DISMISSED………… 23

CONCLUSION ................................................................................ 26

## PRELIMINARY STATEMENT

Defendants, the City of Troy (hereinafter "City") and Sergeant Randall French (hereinafter "French" or "Sergeant French") by and through their attorneys FitzGerald Morris Baker Firth, P.C., submit this Memorandum of Law in support of their post-discovery Motion for Complete Summary Judgment dismissing Plaintiffs' Complaint, awarding Defendants costs, disbursements and reasonable attorney's fees and for such further relief as the Court deems just and proper.

It is axiomatic under the doctrine of qualified immunity that a court may not second-guess, with the benefit of hindsight, the boots on the ground, split second decision of an officer acting to save his or her own life. As reflected by the Complaint, all claims asserted by Plaintiffs arise out of the events that transpired in the early morning hours of April 17, 2016 when Sgt. Randall French, in a moment of existential terror, found himself pinned between his squad car and the still accelerating vehicle of Edson Thevenin (hereinafter "Decedent" or "Thevenin"). Sergeant French aimed his weapon and fired two shots through the windshield. When that failed to halt the vehicle, and the pressure on French's lower body continued to increase as the engine revved, French took aim again, and fired six more times through the windshield, halting the vehicle with French still pinned. It was only after additional officers with civilian assistance were able to manually separate the vehicles that Sergeant French was able to be freed and transported to the hospital for treatment.

The robust shield of qualified immunity arises with the positive answer to just one dispositive question: At the moment Sergeant French fired his weapon, did clearly established precedent prohibit an officer in French's circumstance from taking the same action? The answer here is no. That being the case, Sgt. Randall French is entitled to the shield from suit promised by the qualified immunity doctrine. In sum, a reasonable officer in French's position would not have been on notice that his actions were unlawful. To the contrary, binding precedent, including recent

Supreme Court and Second Circuit decisions, supports French's actions and compels that summary judgment be granted on the basis of qualified immunity.

Likewise, French's actions were reasonable. A police officer is entitled to use deadly force if he has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985). If Sergeant French had probable cause to believe that Thevenin's operation of his vehicle posed such a threat to him, and the record reflects that indeed he did, then he was entitled to use his weapon to defend himself against the threat, and the force utilized was not excessive. An officer's reasonable use of force will not give rise to a claim for excessive force, and likewise, Plaintiffs' pendant state law claims, which all depend on a finding of an unreasonable use of force, must also fail. See, Marcano v. City of Schenectady, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014).

While this federal action sounds primarily in a claim of excessive force, Plaintiffs also assert supplemental claims for assault and battery, wrongful death and conscious pain and suffering under New York State Law. Sergeant French, however, has a statutory right, pursuant to New York State Penal Law §35.30, to utilize deadly force in certain enumerated instances including where the use of deadly force is necessary to defend the police officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force. See, Jamison v. Metz, 541 F. App'x 15, 20 (2d Cir. 2013).

Plaintiffs seek further redress against the City of Troy under a legal theory that the City is liable under §1983 pursuant to the Supreme Court's decision in Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), commonly referred to as a Monell claim.

2

In essence, this action by Plaintiffs impermissibly seeks to second guess the split-second decisions which Sergeant French was compelled to make in the early morning hours of April 17, 2016, all through the "vision of 20/20 hindsight." City & Cty. of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1777, 191 L. Ed. 2d 856 (2015). As demonstrated herein, the record evidence before this Court makes clear that Plaintiffs cannot establish a material question of fact that any Defendant violated Decedent's Constitutional Rights requiring a trial. Moreover, as a matter of law, Defendants are entitled to qualified immunity from suit, a finding that the use of force was justified under New York State Penal Law § 35.30, and Plaintiffs' claim against the City is barred by the Monell doctrine.

## STATEMENT OF FACTS

Submitted in support of this motion is a Statement of Undisputed Facts with record references pursuant to Local Rule 7.1. Those facts (from Defendants' L.R. 7.1 Statement) are incorporated herein by reference.

After midnight, in the early morning hours of April 17, 2016, Sergeant French was on patrol in his vehicle when he first encountered Edson Thevenin. R. 109. Thevenin was operating a Honda Civic, and French observed the Honda make a particularly wide, westbound turn from 6th Avenue to Congress Street, a maneuver which drew his attention to the vehicle. R. 111. The Honda continued west on Congress Street before turning northbound onto 4th Street where it parked on the east side of the roadway. R. 112. Sergeant French passed by the Honda, and entered the plate number into his mobile data terminal (MDT). Id. The MDT revealed that the Honda was validly registered to a woman with a Watervilet, New York, address. R. 113.

Sergeant French circled the block and observed the Honda was still parked, and as such, he continued east onto State Street, parking in the County Offices for a few minutes before receiving a call for assistance in dispersing a large house party in north central Troy. R. 147 – 148.

3

Heading north on 6th Avenue, and on his way to assist with the dispersion of the house party at approximately 3:10 a.m., French again encountered the Honda, and observed as it made an "odd" turn, this time from Fulton Street onto 6th Avenue in front of him and also heading north. R. 149 – 150. As 6th Avenue splits from one into two parallel northbound lanes, Thevenin remained in the right lane while Sergeant French attempted to pass on the left in an effort to continue to respond to the call concerning the house party. R. 151. However, he was intercepted by Thevenin's vehicle as it swerved into his lane, and out again, causing Sergeant French to apply his breaks and preventing him from completing his pass. R. 152. A second attempt to pass was again prevented by Thevenin who swerved into Sergeant French's lane a second time. Id.

Now, concerned for the traveling public, Sergeant French pulled behind the Honda, engaged his lights and executed a traffic stop. R. 152 – 154. Randy exited his vehicle and approached the Honda, asking Thevenin for his license and registration. R. 156 – 157. At this time, while standing next to the vehicle, French could smell a strong odor of alcohol emanating from the vehicle. Id. His suspicion piqued, Sergeant French questioned Thevenin who initially denied drinking anything before admitting to having beer, but only after French told him he could smell it. Id. French retrieved Thevenin's license and returned to his vehicle to run it. R. 157 – 158. The MDT revealed a valid license with no wants or warrants. R. 159. Accordingly, Sergeant French, intending on conducting standard field sobriety testing, grabbed his alco-sensor and walked back towards the Honda. R. 159 – 160.

Sergeant French instructed Thevenin to disengage the vehicle and step out, and informed him that he wanted to make sure Thevenin was okay to continue to drive. R. 160.  Thevenin complied with Sergeant French's request and walked towards the back of the vehicle. R. 160 – 161. At this point, Sergeant French noted that Thevenin had impaired speech, but he could still

4

understand him when Thevenin told him that he was coming from a house party with his brother, had stopped to get pizza, and then that he had gone home. R. 162 – 163. Sergeant French pointed out to Thevenin that he knew that he hadn't gone home, because French had observed him at the pizza shop minutes earlier. Id. Ultimately, Thevenin agreed that this was the case. Id.

Sergeant French commenced the field sobriety testing by performing the horizontal gaze nystagmus test and Thevenin demonstrated all six cues, which indicated a failure of the test. R. 163 – 164. Next, French conducted the vertical gaze nystagmus test and Thevenin failed, again indicating intoxication. R. 164. Proceeding with testing, Randy gave Thevenin instructions on performing the "walk and turn" test but Thevenin had difficulty understanding the instructions. R. 165 – 166. Only after Sergeant French himself demonstrated the test did Thevenin make an attempt, but he failed, stepping off of the line, missing heel-to-toe steps, raising his arms for balance, turning improperly and taking ten steps instead of nine. Id. Finally, Sergeant French endeavored to conduct the one-leg stand test and demonstrated the test to Thevenin. R. 166 – 167. While Thevenin attempted the test, he was unable to proceed and French halted the test, worried that Thevenin might fall over. Id.

Sergeant French then removed his alco-sensor and told Thevenin to blow into it. R. 167 – 168. Thevenin refused to comply, and said that he had two beers and did not want to take the test. Id. After refusing, Sergeant French informed Thevenin that he was under arrest for DWI. R. 169.

Thevenin became irritated at this point, and put his hands up, stating to Sergeant French that he can't get arrested, and that he would lose his job if he was. R. 169. Sergeant French, proceeding with his attempt to arrest Thevenin, ordered him to put his hands behind his back, but Thevenin did not comply, only repeating "no, no, no." R. 169 – 170.

5

Faced with Thevenin's refusal to comply, Sergeant French adopted a more stern tone now, and again ordered Thevenin to turn and put his hands behind his back. Id. Thevenin appeared to begin to comply, turning sideways and placing his hands behind his back. R. 170. However, when French attempted to apply cuffs, Thevenin refused to put his hands together, keeping his arms rigid and preventing Sergeant French from applying handcuffs. Id.

French called into his portable radio that he needed assistance, and continued to attempt to wrestle Thevenin's hands together to apply handcuffs. R. 170 – 171. After a matter of seconds, Thevenin said "fuck this" and ripped his hands from French and started towards the driver's seat of the Honda. R. 171 – 172.

As Thevenin attempted to get to the driver's seat, Randy grabbed the hood of his sweatshirt and tried to slow Thevenin down, but Thevenin was larger than Sergeant French in both height, by more than six inches, and weight, by more than fifty pounds, and French could not physically stop him. R. 172. Sergeant French attempted to apply OC spray to the right side of Thevenin's face, but it too failed in preventing Thevenin from getting to the driver's seat. Id.

Thevenin reached his car door and sat hard into the car which severed Sergeant French's hold of him. R. 174 – 175. With Thevenin now in the driver seat, French again deployed his OC spray, but Thevenin was likewise unfazed. R. 175. Sergeant French, knowing that the keys were in the ignition of the Honda, applied his upper forearm to Thevenin's chest, trying to push him back into the seat so that French could reach the ignition and remove the keys. R. 176. However, Thevenin was able to get to the keys first, and engaged the Honda's engine. R. 177.

With Sergeant French unable to prevent Thevenin from turning the vehicle on, he changed his focus to the gear selector, attempting to reach across Thevenin's body to prevent him from putting the vehicle into gear. R. 177. Again, Thevenin was able to resist Sergeant French's attempts

and reached the gear selector first, putting the Honda into drive, and applying the gas pedal with Sergeant French still halfway in the car. R. 178.

Fearing that he would be dragged by the Honda as it drove away, Sergeant French pushed himself out of the car and fell onto the roadway. Id. As he ran back towards his vehicle, Sergeant French radioed that Thevenin was northbound on 6th Avenue, and gave a vehicle description to Officer Dean who had indicated that he was a few blocks away and en route to assist. R. 179– 180.

Sergeant French entered his vehicle, engaged his lights and siren, and followed Thevenin northbound. R. 180. The Honda turned right, into the westbound lane, but in the wrong direction, going eastbound against traffic on Hoosick Street. R. 181. Thevenin made a U-turn west onto the Collar City Bridge, but crashed into a cement barrier on the left hand side of the roadway, coming to rest at an angle after the driver's side front corner impacted the barrier. R. 182 – 183. Intent on ending Thevenin's flight, Sergeant French maneuvered his vehicle around the Honda, stopping a few feet in front of it in order to restrict the ability of Thevenin to continue his flight. R. 183.

Sergeant French grabbed his Maglite and exited his patrol car, intending to get to the passenger side of the Honda in order to get in and stop Thevenin's flight. R. 185. This plan, however, was not to be executed. In a moment, and despite his attempt to move out of the way, and his yelling for Thevenin to "Stop!" Sergeant French became immediately pinned between the front bumper of the Honda and the side of his patrol vehicle. R. 187 – 188.

Sergeant French, trapped between the vehicles, struggled to get himself free. An attempt to free himself up onto the hood of the Honda was unsuccessful as Sergeant French could not pry his leg away. R. 188. The pain in French's leg grew unbearable, and he recalls in the moment praying that his leg would break in hope of alleviating the pain and pressure being caused by the continued forward pressure of the Honda. R. 189. With no other options, and faced with increasing

7

pain and the belief that he was going to be killed by Thevenin, French drew his weapon, aimed, and fired through the windshield. R. 189.

Still, the Thevenin vehicle continued to rev its engine and Sergeant French was caused to twist between the vehicles, resulting in his left leg rotating sideways between the Honda and his patrol car, with French lying across the hood with his head towards the passenger side of the Honda's windshield. R. 192 – 195. French heard the engine continuing to roar, and saw that Thevenin appeared to be unfazed by the first use two shots. R. 198 – 199. In continued defense of life and limb, French leveled his weapon and fired again, ceasing his fire when he finally heard the engine stop revving. Id.

After the Honda's engine ceased to rev, French remained with his leg pinned and he shouted for help in getting the Honda off of him. R. 200. He could not free himself, and it was only after the arrival of additional officers and civilian assistance that the vehicles could be manually separated enough to get French free. R. 200 – 203. French fell to the ground, but his boot was still caught in the Honda. Id. He was cut free and was helped to his feet and loaded into a nearby police vehicle to be transported to the hospital for treatment. R. 203 – 204.

## ARGUMENT
### I.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure ("FRCP") requires that summary judgment be granted if the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). This "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

8

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party argues demonstrates the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the movant establishes a *prima facie* basis for summary judgment, the burden shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Jones v. Smithkline Beecham Corporation d/b/a Glaxo Smith Kline, 309 F.Supp.2d 343, 349 (N.D.N.Y. 2004).

In other words, the non-moving party can only defeat a motion for summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial." Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009); see also, Celotex Corp. 477 U.S. at 323 (1986). Finally, the non-moving party must do more than "rest upon the mere allegations...of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, & n. 11 (1986).

## II.    THE EXCESSIVE FORCE CLAIM PURSUANT TO 42 USC §1983 MUST FAIL BECAUSE THE FORCE USED WAS OBJECTIVELY REASONABLE TO OVERCOME THE THREAT TO SERGEANT FRENCH'S LIFE POSED BY THEVENIN'S UTILIZATION OF HIS VEHICLE AS A WEAPON.

A plaintiff pursuing a claim under §1983 for excessive force bears the burden of proving that the force used was objectively unreasonable in light of the facts and circumstances confronting a defendant officer. Although Plaintiffs here allege a violation of the Fourteenth Amendment in addition to the Fourth Amendment, the Supreme Court has held "[t]oday we make explicit what was implicit in Garner 's analysis, and hold that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard,

rather than under a "substantive due process" approach." Graham v. O'Connor, 490 U.S. 386, 395 (1989) citing Tennessee v. Garner, 471 U.S. 1, 4, 105 S. Ct. 1694, 1698, 85 L. Ed. 2d 1 (1985); See, Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (explaining that the Fourth Amendment inquiry is an exclusively objective reasonableness standard).

With regard to deadly force in particular, it is reasonable for an officer to employ deadly force if the he or she has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985); see also, Plumhoff v. Rickard, 572 U.S. 765, 775, 134 S. Ct. 2012, 2021, 188 L. Ed. 2d 1056 (2014) ("Under the circumstances at the moment when the shots were fired, all that a reasonable police officer could have concluded was that [decedent] was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road. [Decedent's] conduct even after the shots were fired—as noted, he managed to drive away despite the efforts of the police to block his path—underscores the point.")

Further, in addressing the question of reasonableness, an officer's actions leading up to the application of force are irrelevant. Rather, it is only the circumstances immediately prior to and at the moment of the deadly force which are relevant. See, Woodward v. Town of Brattleboro, 148 F. App'x 13, 14 (2d Cir. 2005) ("it is irrelevant that the officer may have negligently helped create the deadly circumstances; only the circumstances immediately prior to and at the moment of the deadly force are relevant.") (citing Salim v. Proulx, 93 F.3d 86 (2d Cir. 1996)); Fortunati v. Campagne, 681 F. Supp. 2d 528, 536 (D. Vt. 2009) ("District Courts in the Second Circuit are precluded from taking a broader view and considering, for example, whether the police created the need for deadly force in the first place.") (citing Salim, 93 F.3d 86); see also, Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995) (courts "are not concerned with the correctness of the defendant's

conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene.")

So the question to be answered in determining summary judgment on Plaintiffs' claim of excessive force is this: At the moment that Sergeant French discharged his weapon, did he have probable cause to believe that Thevenin posed a significant risk of death or serious physical injury to Sergeant French or others? It is submitted that the answer is a resounding "yes."

Addressing an analogous case, the Southern District of New York, applying the Supreme Court's ruling in Plumhoff v. Rickard, 572 U.S. 765, 766, 134 S. Ct. 2012, 2016, 188 L. Ed. 2d 1056 (2014), found that the deadly force utilized by police officers was reasonable where they had probable cause that the driver of a vehicle posed a significant threat of death or serious physical injury to those around him, and that the interest in ending that threat justified both occasions of defendant officer's use of his weapon against the driver. Peguero v. City of New York, No. 12-CV-5184 JPO, 2015 WL 1208353, at *8 (S.D.N.Y. Mar. 17, 2015).

In Peguero, defendant officers became aware of a pursuit in which the pursuing officers had lost track of the vehicle. Id. at 1. The officers came across the subject vehicle stopped at a red light, exited their vehicles and approached, ordering the driver to "stop the car." Id. The vehicle accelerated forward, hitting a motorcycle in front of it, and then reversed at a high rate of speed hitting the car behind it. Id. One officer stood in front of the car, approximately a car length and a half away. Id. The vehicle accelerated towards the officer, the officer backpedaled and fired one shot at the driver, striking him. Id. The vehicle then traveled in a semi-circle, and again drove towards the officer causing him to jump out of the way, and firing a second shot at the driver.

Plaintiffs commenced an action against the officer and others alleging excessive force pursuant to §1983. Defendants moved for summary judgment. In opposition to the motion,

11

plaintiffs pointed to the fact that the accounts of civilian witnesses contradicted the accounts of the officers in relation to the location of the officers at the time the shots were fired, whether the vehicle was moving when the shots were fired, when the officer fired and whether or not the driver was attempting to run over the officers.

Nevertheless, the court granted summary judgment, finding that the essential facts were undisputed and the officer had probable cause to believe that the driver posed a significant threat of death or serious physical injury to those around him. Id. at 6. It did not matter where the officers were located in relation to the vehicle, as the officer had probable cause to believe, based on the driver's behavior, that had he successfully been allowed to escape, that he posed a threat to civilians both nearby and elsewhere. Id. at 9. Similarly, whether or not the driver intended to hit the officer or not was not material as the officer had sufficient grounds to believe that the driver posed a threat. Id. at 10. Even resolving these discrepancies in favor of plaintiffs, the court held that there was no genuine dispute as to the conclusion that the use of force was reasonable. Id.

Similar here, Sergeant French had probable cause to believe that Thevenin posed a threat of death or serious physical injury, and therefore French's use of deadly force was objectively reasonable. Although there is a civilian witness here who has provided varying accounts of the incident in relation to when the shots were fired, the essential facts necessary to grant summary judgment to Defendants are undisputed. Thevenin was fleeing from police, and the chase temporarily stopped when Thevenin's vehicle impacted a concrete barrier moments after driving the wrong way down Hoosick Street. R. 171 – 179, 181, 183, 424. Sergeant French exited his vehicle and ordered Thevenin to stop. R. 186 – 187, 435. Thevenin reversed his vehicle and impacted Captain Montanino's vehicle before accelerating at Sergeant French, impacting him, and

pinning him between Thevenin's vehicle and his patrol car. R. 188, 437 – 439. Thevenin continued

to accelerate and French feared that he would die as a result of Thevenin's actions. R. 188, 191.

Based on these facts, no reasonable jury could conclude that French's actions constituted

excessive force as Sergeant French had probable cause to believe that Thevenin posed a significant

threat of death or serious physical injury to himself or to others. See, Plumhoff v. Rickard, 572

U.S. 765, 766, 134 S. Ct. 2012, 2015, 188 L. Ed. 2d 1056 (2014)

However, unlike the facts in Peguero, and further signaling the reasonableness of his

actions, French could not jump out of the way or backpedal to avoid the danger being imposed

upon him as the officer was able to do in Peguero. Rather, it was only after he faced the fact that

he could not escape from Thevenin that French deployed his weapon in self-defense. R. 189 – 191.

Therefore, the answer to the dispositive question here is clearly "yes:" At the moment he

fired his weapon, Sergeant French had probable cause to believe that Thevenin posed a significant

risk of death or serious physical injury to French and others. That being said, Defendants are

entitled to summary judgment as Sergeant French's use of force was objectively reasonable.

### III.   PLAINTIFFS CANNOT OVERCOME SERGEANT FRENCH'S ENTITLEMENT TO QUALIFIED IMMUNITY

Even if Sergeant French utilized excessive force, "even officers who are found to have

used excessive force may be entitled to an extra layer of protection through the qualified immunity

doctrine 'from the sometimes hazy border between excessive and acceptable force.'" Stephenson

v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) quoting Saucier v. Katz, 533 U.S.194, 206 (2001) overruled

on other grounds Pearson v. Callahan, 555 U.S. 223, S. Ct. 808, 172 L. Ed. 2d 565 (2009). It is

well settled that the qualified immunity defense "protects all but the plainly incompetent or those

who knowingly violate the law." Kisela, 138 S. Ct. 1152, 200 L. Ed. 2d 449 quoting White, 137

S. Ct. 551, 196 L. Ed. 2d 463. "The question is not what a lawyer would learn or intuit from

13

researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct." Young v. Cnty. of Fulton, 160 F.3d 899, 903 (2d Cir. 1998).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" Kisela, 138 S. Ct. 1152, 200 L. Ed. 2d 449 quoting White v. Pauly, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017); see also, Salhuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). Police officers are entitled to qualified immunity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Kerman v. City of New York, 374 F.3d 93, 108 (2d Cir. 2004).

Under the first prong of qualified immunity analysis, for a constitutional right to be "clearly established," "courts must consider 'whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the [Second Circuit] supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his [or her] actions were unlawful.'" Cannon v. Wood, No. 9:10-CV-01332 GTS, 2013 WL 838299, at *12 (N.D.N.Y. Jan. 22, 2013), report and recommendation adopted, No. 9:10-CV-1332 GTS/RFT, 2013 WL 838294 (N.D.N.Y. Mar. 6, 2013) quoting Rodriguez v. Phillips, 66 F.3d 470, 476 (2d Cir. 1995); see also, Hinton v. Prack, No. 9:12-CV-1844 LEK/RFT, 2014 WL 4627120, at *18 (N.D.N.Y. Sept. 11, 2014). "[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." City of Escondido, Cal., 139 S. Ct. 503, quoting Kisela, 138 S. Ct. 1153, 200 L. Ed. 2d 449. Further, the formulation of the

14

purported clearly established right must not be too general, but must be defined by a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment, or where a body of relevant case law clearly establishes the answer. See City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 504 (2019).

Under the second prong of the qualified immunity analysis, "[t]he relevant inquiry 'is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted'." Jenkins v. Medert, No. 916CV1491MADDJS, 2018 WL 4328823, at *3 (N.D.N.Y. Sept. 11, 2018), reconsideration denied, No. 916CV1491MADDJS, 2018 WL 5283872 (N.D.N.Y. Oct. 24, 2018) quoting Stephenson, 332 F.3d 77; see also City of Escondido, Cal., 139 S. Ct. 503.

Here, the dispositive question is this: did controlling precedent at the time clearly establish that an officer in Sergeant French's circumstance is constitutionally prohibited from using deadly force? See Id. ("The Court of Appeals should have asked whether clearly established law prohibited the officers from stopping and taking down a man in these circumstances.") On the undisputed record, the answer must be no, which means that Sergeant French is entitled to the shield from suit provided by qualified immunity. The most analogous precedent in fact favors the constitutionality of Sergeant French's actions.

In Brosseau v. Haugen, 543 U.S. 194, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004), the Supreme Court found that an officer was entitled to qualified immunity when she fired her weapon at a suspect with a no-bail warrant who was fleeing in a vehicle even though the suspect had not yet operated his vehicle in a dangerous manner. Id. at 195. The suspect ignored commands as the officer pounded on his window with her weapon. Id. at 196. After the window broke, the officer struck the suspect on the head with the barrel of her weapon which failed to deter the suspect who then started the vehicle and drove away. Id. The officer jumped back and fired a single bullet

through the driver's side window, striking the suspect. The Supreme Court determined that when faced with the decision "whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight," the constitutionality of the use of deadly force "depends very much on the facts of each case" and as such, the officer was entitled to qualified immunity. Id. at 201.

The Supreme Court expanded on Brosseau in Plumhoff, 572 U.S. 780, 134 S. Ct. 2023, 188 L. Ed. 2d 1056, holding that it was reasonable for officers to fire upon a vehicle involved in a pursuit. Finding the officer's conduct reasonable, the court considered that, "at the moment when the shots were fired, all that a reasonable police officer could have concluded was that [decedent] was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road. [Decedent's] conduct even after the shots were fired—as noted, he managed to drive away despite the efforts of the police to block his path—underscores the point." Id. at 777. The Court further held that even if the defendants had violated the Fourth Amendment, they were entitled to qualified immunity as, per Brosseau supra, "this is an area in which the result depends very much on the facts of each case, and the cases by no means clearly established that the officer's conduct violated the Fourth Amendment." Id. at 779.

Similar here, despite Sergeant French's attempt to block Thevenin's path, Thevenin's actions made clear his efforts to resume his flight, and in doing so, he drove his vehicle at Sergeant French, impacting him and pinning him between the two vehicles. Only then did Sergeant French utilize deadly force. Therefore, not only were Sergeant French's actions reasonable under Plumhoff, as his actions occurred in an area in which the Supreme Court has held that the law is unclear and fact-dependent, he is *at least* entitled to qualified immunity.

16

The Supreme Court further examined such a use of force in <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 310, 193 L. Ed. 2d 255 (2015), in which it was held that officers were entitled to qualified immunity in utilizing their weapons to shoot at a passing driver from an overpass. Notably, the Court observed, "[t]he Court has thus never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity." <u>Id.</u> at 310. Here, Thevenin was undoubtedly involved in a dangerous car chase as he was operating his vehicle while apparently intoxicated, drove the wrong way down a city street, crashed his vehicle into a barrier, impacted Captain Montanino's vehicle while in reverse, and then drove his vehicle towards Sergeant French, impacting Sergeant French personally as well as his patrol vehicle and pinning him. As such, there is no precedent which holds that such conduct violates the Fourth Amendment, let alone provide a basis for denying qualified immunity.

In <u>Costello v. Town of Warwick</u>, 273 F. App'x 118, 119 (2d Cir. 2008), officers had boxed in a vehicle driven by the decedent. The decedent put the car into drive, impacting the car in front of him, and then reversed into the car behind him. <u>Id.</u> An officer standing by the passenger side door fired his weapon at the driver, killing him. <u>Id.</u> The Second Circuit held that the officer's use of deadly force was reasonable where the officer believed that the driver would use his car to inflict serious bodily harm on officers. Likewise, here, Sergeant French fired his weapon while bearing the belief that Thevenin was using his vehicle in a manner which threatened him with death.

Sergeant French's actions were just as reasonable as the actions taken by the officers in <u>Brosseau</u>, <u>Plumhoff</u>, <u>Costello</u> and <u>Mullenix</u> and Plaintiffs will not be able to point to a "controlling authority or robust consensus of cases of persuasive authority" so as to put Sergeant French on notice that any of his conduct was unlawful. <u>Plumhoff</u>, 572 U.S. 767, 134 S. Ct. 2016, 188 L. Ed. 2d 1056 quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011).

Simply, the facts necessary to reach this conclusion are undisputed. At the moment Sergeant French determined to utilize his firearm, (1) Thevenin had been involved in a dangerous car chase through the streets of Troy, R. 180 - 183; (2) Sergeant French had ordered Thevenin to "stop" and Thevenin did not comply R. 186 - 187; (3) Thevenin's vehicle reversed into Captain Montanino's vehicle and impacted it, R. 437 – 439; (3) French became trapped between the Thevenin vehicle and his patrol vehicle as the Thevenin vehicle continued to accelerate, R. 187–188; (5) French feared he would die if Thevenin were not stopped, R. 191; and (6) French was experiencing excruciating pain. R. 189.

Not only does Second Circuit and Supreme Court precedent fail to establish a clear constitutional right which was violated, the precedent as detailed above in fact supports the finding that the force utilized by Sergeant French was reasonable and, Sergeant French is entitled to qualified immunity and is therefore shielded from suit. See, Kisela, 138 S. Ct, 1152.

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' CLAIMS THAT DEFENDANT CITY DEPRIVED HIM OF HIS CONSTITUTIONAL RIGHTS PURSUANT TO AN OFFICIAL CUSTOM, POLICY, OR PRACTICE OF THE CITY OF TROY

It is well settled that a municipality cannot be held liable under §1983 pursuant to a theory of *respondent superior*. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "Plaintiffs who seek to impose liability on local governments under §1983 must prove, *inter alia*, that the individuals who violated their federal rights took 'action pursuant to official municipal policy'." Outlaw v. City of Hartford, 884 F.3d 351, 372 (2d Cir. 2018) citing Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). Absent such a custom, policy, or usage, a municipality cannot be held liable for the tort of its employee." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012).

In other words, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 405, 117 S. Ct. 1382, 1389, 137 L. Ed. 2d 626 (1997). Merely because a plaintiff may have "… suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." Id. "[A] single incident involving an employee or employees below the policy making level will generally not suffice to support the inference of a municipal policy." Liggins v. City of Utica, No. 6:14-CV-446, 2014 WL 7346041, at *4 (N.D.N.Y. Dec. 23, 2014) citing DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998).

Rather, a municipal policy or custom can only be shown by:

> "(1) a formal policy, officially promulgated by the municipality, [Monell, 436 U.S.] at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, [Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292, 1300, 89 L. Ed. 2d 452 (1986)]; (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, City of St. Louis v. Praprotnik, 485 U.S. 112, 127–30 (1985) (plurality opinion); or (4) a failure to train, supervise, or discipline that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. [City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989)]."

Veline Hicks, Plaintiff, v. The City Of Syracuse, Police Officer David Craw shield # 0258, & Police Officer David Hart shield # 0149, sued herein in their capacity as individuals, Defendants, No. 5:17-CV-0475, 2018 WL 6308653, at *3 (N.D.N.Y. Dec. 3, 2018) citing Kavanaugh, No. 814CV01244BKSDJS, 2016 WL 7495813, at *6.

Here, Plaintiffs have failed to allege or adduce evidence which demonstrates a municipal policy so as to sustain a Monell claim. First, Plaintiffs fail to allege, and the record is bereft of any

formal policies, officially promulgated by the City of Troy which have caused or are alleged to have caused the alleged violation of the Decedent's Constitutional Rights. Second, the record contains no evidence of any action taken by the official responsible for establishing policy with respect to the actions taken by Sergeant French. Third, the record contains no evidence of past unlawful practices of subordinate officials "so permanent and widespread" as to have the force of law. Fourth, there is no evidence that the City has failed to train, supervise or discipline the Defendant Officers to an extent which amounts to "deliberate indifference" to the rights of the Decedent. See, Canton, 489 U.S. 378.

To the extent that Plaintiffs will rely on a theory of failure to train to substantiate their Monell claim, the record reflects that the City of Troy does indeed have a training program, and that Sergeant French completed that program. R. 41. As that is the case, it is incumbent upon Plaintiffs to "establish not only that the purported failure to train occurred under circumstances that constitute deliberate indifference, but also Plaintiffs must identify a specific deficiency in the municipality's training program and establish that the deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004).

Here, Sergeant French testified as to his substantial training in completing 22 weeks of training at the Zone 5 Police Academy (hereinafter "Zone 5.") R. 41. At Zone 5, French received training specific to intoxicated individuals and that he was trained to do the best that he can in dealing with them by speaking clearly, staying calm, and repeating himself if the individual does not understand his instructions. R. 47 – 48. The Zone 5 training also involved training in the use of OC spray. R. 102. Following his completion of training at Zone 5, French completed field training. R. 42 He further received specialized training in Lidar, Radar and the use of the Data

Master[1]. R. 43 – 44. French is certified as a field training instructor, a general topics instructor, a firearms instructor, a rifle instructor and a mental health instructor. R. 43 – 44. He further has successfully passed both the basic and advanced SWAT operator courses and the weapons of mass destruction SWAT operator course. Id. French is an armorer for Sig Saur which certifies him to diagnose problems and make repairs to handguns as part of his role as a firearms instructor. R. 45.

As the record establishes that French has received training, it is incumbent on Plaintiffs to point to a specific deficiency in the training received by Sergeant French. Without doing so, Plaintiffs' Monell claim cannot survive summary judgment.

Municipalities have limited resources to train their employees. Even if Plaintiffs can show a failure to train, the mere failure to train on a subject without more does not give rise to liability unless plaintiffs can show that, in relation to that failure to train or deficient training:

> "(1) that "a policymaker [of the municipality] knows 'to a moral certainty' that [its] employees will confront a given situation"; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." Young, 160 F.3d 904.

Here, then, it is incumbent upon Plaintiffs to show by admissible evidence that: (1) the City knew to a moral certainty that City Police Officers would confront situations where an officer finds himself in front of a vehicle operated by a fleeing suspect, with that suspect accelerating the vehicle towards him and then impacting him, trapping him between two vehicles; (2) the Defendant Officers faced a "difficult choice" in using the police tools available to them to respond to Thevenin's assault and attempt to flee and that training would make such a choice easier; and (3) wrong choices in responding the force utilized by a fleeing suspect would frequently cause the deprivation of the arrestee's Constitutional Rights. Simply, the record is lacking facts which would

---

[1] Also known colloquially as a "Breathalyzer."

support such findings in this case and, therefore, it cannot be found that there was a failure to train amounting to deliberate indifference to the rights of Thevenin so as to support a Monell claim.

The only proof in the record is to what training the Defendant Officers have *actually received*. There is no factual support in the record for the allegations which constitute Plaintiffs' Monell claim and the allegations contained in Plaintiffs' Complaint are little more than baseless conclusions. "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." Hicks, No. 5:17-CV-0475, 2018 WL 6308653, at *3 (quoting Tieman v. City of Newburgh, No. 13-CV-4178 KMK, 2015 WL 1379652, at *13 (S.D.N.Y. 2015)). Therefore, Plaintiffs' Monell claim cannot be maintained and Defendants are entitled to summary judgment.

Plaintiffs further assert failure to train and negligent retention grounds in relation to Plaintiffs' Monell claim which likewise must fail.

> "A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 411, 117 S. Ct. 1382, 1392, 137 L. Ed. 2d 626 (1997).

The Supreme Court further held that, "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that this officer was highly likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong. Id.

In <u>Brown</u>, the plaintiff alleged that defendant had negligently hired an officer who allegedly inflicted physical injuries against plaintiff after plaintiff was forcibly removed from their vehicle. The Supreme Court held that, in order to sustain her claim, plaintiff needed to show that a full review of the officer's record should have led the hiring officer to conclude that the officer's use of excessive force was a plainly obvious consequence of the hiring decision. <u>Id.</u> at 413.

Here, it cannot be said that the City of Troy should have concluded, after a review of Sergeant French's record, that it was "plainly obvious" that he would use excessive force as a consequence of the hiring decision. Specifically, the record evidence in the case at hand reveals that Sergeant French had expansive training relating to the use of firearms, and further that at no point in his service as a police officer had he discharged his firearm at another human being. R. 43-46, 76–77. Therefore, Plaintiffs' claim relating to negligent hiring cannot be sustained as the record evidence does not demonstrate that a background screening of Sergeant French should have led a policymaker to conclude that the alleged constitutional injury to Decedent was a "plainly obvious consequence" of the decision to hire Sergeant French.

Finally, if a claim fails as to an individual defendant because of that defendant's entitlement to qualified immunity, it necessarily fails as to the municipality as well. <u>Clubside, Inc. v. Valentin</u>, 468 F.3d 144, 161 (2d Cir. 2006); <u>see also</u>, <u>Tracy v. Freshwater</u>, No. 5:01CV0500(HGM/GHL), 2007 WL 2230068, at *8 (N.D.N.Y. July 31, 2007) <u>vacated on other grounds Tracy v. Freshwater</u>, 623 F.3d 90 (2d Cir. 2010). Accordingly, Plaintiffs' <u>Monell</u> claim must fail and Defendants' are entitled to summary judgment.

## V.   PLAINTIFFS' NEW YORK STATE LAW CLAIMS FOR ASSAULT AND BATTERY, CONSCIOUS PAIN AND SUFFERING AND WRONGFUL DEATH MUST BE DISMISSED

For the same reasons detailed above for the proposition that Sergeant French's actions were objectively reasonable, Plaintiffs' state law claims must fail because Sergeant French used no more

force than reasonable under the circumstances. "Federal excessive force claims and state law assault and battery claims against police officers are nearly identical." Graham v. City of New York, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) (citing Humphrey v. Landers, 344 Fed. App'x 686, 688 (2d Cir. 2009)). "To succeed on an assault or battery claim in the law enforcement context, a plaintiff must demonstrate that defendant's conduct 'was not reasonable within the meaning of [New York Penal Law § 35.30] concerning justification for law enforcement's use of force in the course of performing their duties.'" Marcano v. City of Schenectady, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014) (citations omitted). Essentially, the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York Law. Id.; see also, Disla v. New York, 117 A.D.3d 617 (1st Dep't 2014); Green v. City of Mt. Vernon, 96 F. Supp. 3d 263 (S.D.N.Y. 2015).

Thus, the force used by the public officials is privileged under Penal Law §35.30 absent a showing of excessive force. Disla, 117 A.D.3d 617. As detailed above, Sergeant French was trapped, and subject to existential fear and increasing physical pain and faced the real possibility that he would be killed or subject to serious physical injury if Thevenin was not stopped. Therefore, his use of deadly force in self-defense was an appropriate use of force in response to the threat he faced, and Sergeant French is entitled to the justification defense provided by New York Penal Law § 35.30 against Plaintiffs' New York State common law claims for assault and battery.

Likewise, the elements of a claim for wrongful death are: "(1) the death of a human being, (2) the wrongful act, neglect or default of the defendant by which the decedent's death was caused, (3) the survival of distributees who suffered pecuniary loss by reason of the death of decedent, and (4) the appointment of a personal representative of the decedent." Zikianda v. Cty. of Albany, No. 1:12-CV-1194, 2015 WL 5510956, at *60 (N.D.N.Y. Sept. 15, 2015). Therefore, such a claim

cannot be sustained in the absence of a wrongful act of the defendant which caused the death of the Decedent. Here, the actions of Sergeant French were objectively reasonable and are privileged. Therefore, such an act was not wrongful and the wrongful death claim cannot be maintained. See, Breitkopf v. Gentile, 41 F. Supp. 3d 220, 247 (E.D.N.Y. 2014) ("Because claims for battery under New York law are judged under the Fourth Amendment's objective reasonableness standard,… the Court also grants summary judgment to [defendant] on the state law battery claim. This determination also disposes of Plaintiff's wrongful death claim against [defendant]…")

A claim for conscious pain and suffering derives from the same statutory basis as a claim for wrongful death, EPTL §5-4.1, and for the same reasons, one cannot recover on that basis without demonstrating that Decedent's death was caused by the wrongful act or neglect of the defendant. Further, "[a] claimant must demonstrate a level of awareness for a period of time following the injury in establishing conscious pain and suffering. Pub. Adm'r of Queens Cty. ex rel. Estate & Beneficiaries of Guzman v. City of New York, No. 06 CIV. 7099, 2009 WL 498976, at *13 (S.D.N.Y. Feb. 24, 2009) citing Cummins v. Cty. of Onondaga, 84 N.Y.2d 322, 324, 642 N.E.2d 1071, 1072 (1994). "'Mere conjecture, surmise or speculation is not enough to sustain a claim for [pain and suffering] damages'…. Without legally sufficient proof of consciousness following an accident, a claim for conscious pain and suffering must be dismissed." Id. quoting Fiederlein v. New York City Health & Hosps. Corp., 56 N.Y.2d 573, 435 N.E.2d 398 (1982).

In the alternative, to the extent that Plaintiffs' federal claims may be dismissed, this Court should decline to exercise jurisdiction over the state law claims given the absence of extraordinary circumstances. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988).

## **CONCLUSION**

For the forgoing reasons, it is respectfully requested that the Court issue an Order pursuant to Fed. R. Civ. P. Rule 56 granting summary judgment and dismissing this action and allowing Defendants to submit an application for the recovery of attorney's feed pursuant to 42 U.S.C. §1988, together with such other further and different relief as is just and proper.

Dated: February 28, 2019

John D. Aspland, Jr., Esq.
Bar Roll #512134
FitzGerald Morris Baker Firth PC
Attorneys for Defendants
16 Pearl St.
Glens Falls, NY 12801
(518) 745-1400

Michael A. Brandi, Esq.
Bar Roll #700481
FitzGerald Morris Baker Firth PC
Attorneys for Defendants
16 Pearl St.
Glens Falls, NY 12801
(518) 745-1400