UNITED STATED DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CINTHIA THEVENIN, Individually, and as wife of Edson Thevenin, Decedent, and as Administratrix of the Estate of Edson Thevenin, and as mother and natural guardian of Infant N.T. and as mother and natural guardian of Infant Z.T.,,

                              Plaintiff

-against-

THE CITY OF TROY, and SERGEANT RANDALL FRENCH,

                              Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION PURSUANT TO FRCP RULE 56**

Civil No. 1:16-CV-1115 (DJS)

---

Respectfully submitted,

FitzGerald Morris Baker Firth PC
Attorneys for Defendants
68 Warren Street
P.O. Box 2017
Glens Falls, New York 12801
(518) 745-1400

## **TABLE OF AUTHORITIES**

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .... 8, 12

Brosseau v. Haugen, 543 U.S. 194, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) .......................... 6, 7

Camreta v. Greene, 563 U.S. 692, 131 S. Ct. 2020 179 L. Ed. 2d 1118 (2011) ............................ 6

Cass v. City of Dayton, 770 F.3d 368 (6th Cir. 2014) ...................................................................... 7

City of Escondido, Cal. v. Emmons, 139 S. Ct. 500 (2019) ................................................. 1, 2, 8

Cox v. Vill. of Pleasantville, 271 F. Supp. 3d 591 (S.D.N.Y. 2017) ............................................. 7

D.C. v. Wesby, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018) .............................................................. 2

Estate of Priolo by Priolo v. City of New York, No. 15-CV-6080(AMD)(ST), 2019 WL 1428403 (E.D.N.Y. Mar. 29, 2019) ................................................................................................... 5

Godawa v. Byrd, 798 F.3d 457 (6th Cir. 2015) ................................................................... 6, 7, 10

Jones v. Muniz, 349 F. Supp. 3d 377, 386 (S.D.N.Y. 2018) ........................................................... 7

Kisela v. Hughes, 138 S. Ct. 1148, 200 L. Ed. 2d 449 (2018). ........................................... 1, 2, 3, 5

Martin for Estate of Webb v. City of Newark, No. 18-1228, 2018 WL 6828424 (3d Cir. Dec. 28, 2018) ................................................................................................................................ 11, 12

Mullenix v. Luna, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) ......................................................... 8

O'Bert .......................................................................................................................................... 4

O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29 (2d Cir. 2003) ............................................ 3

Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ......................... 5, 6

Plumhoff v. Rickard, 572 U.S. 765, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014) ......................... 8

Rose v. City of Utica, No. 614CV01256BKSTWD, 2018 WL 2041621 (N.D.N.Y. Apr. 19, 2018) .................................................................................................................................................. 3, 4

Rothbein v. City of New York, No. 18-CV-5106 (VEC), 2019 WL 977878 (S.D.N.Y. Feb. 28, 2019) ............................................................................................................................................. 6

Shepherd on behalf of Estate of Shepherd v. City of Shreveport, No. 18-30528, 2019 WL 1467340(5th Cir. Apr. 3, 2019) ................................................................................................ 3

**STATUTES**

Fed. R. Civ. P. Rule 56 .................................................................................................................. 1

New York State Penal Law Section 35.30 ................................................................................... 3

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ……………………………………………………… 1

I. PLAINTIFF'S ASSERTION OF AN ALLEGED CONSTITUTIONAL RIGHT IS FAR TOO GENERAL TO CONSTITUTE A "CLEARLY ESTABLISHED RIGHT" FOR PURPOSES OF ADDRESSING DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY …………………………… 1

II. PLAINTIFF MISSTATES THE LAW GOVERNING QUALIFIED IMMUNITY ……………………....……. 4

III. THE CASES CITED TO BY PLAINTIFF SUPPORT THE GRANTING OF SUMMARY JUDGMENT TO DEFENDANTS……………………………………………. 5

IV. THE FACTS NECESSARY TO AWARD DEFENDANT SUMMARY JUDGMENT ARE NOT CONTESTED ……………………………………….…… 6

CONCLUSION ……………………………………………………………….….. 10

## PRELIMINARY STATEMENT

The City of Troy and Sergeant Randall French, Defendants in this action, submit this reply Memorandum of Law in further support of their motion pursuant to Fed. R. Civ. P. Rule 56 for summary judgment dismissing the Complaint filed by Plaintiff.

### I. PLAINTIFF'S ASSERTION OF A CONSTITUTIONAL RIGHT IS FAR TOO GENERAL TO CONSTITUTE A "CLEARLY ESTABLISHED RIGHT" FOR PURPOSES OF ADDRESSING DEFENDANTS' ENTITLEMENT TO QUALIFIED IMMUNITY

On January 7, 2019, the Supreme Court issued its decision in City of Escondido, Cal. v. Emmons, 139 S. Ct. 500 (2019) which once again reaffirmed that "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018). The Supreme Court, further citing to Kisela, held that

> "This Court has repeatedly told courts ... not to define clearly established law at a high level of generality." Kisela, 584 U.S., at ——, 138 S.Ct., at 1152 (internal quotation marks omitted). That is particularly important in excessive force cases, as we have explained:
>
> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue...
>
> '[I]t does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'"

City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019).

In overturning the denial of summary judgment to defendant police officer, the Supreme Court noted that the Ninth Circuit improperly contravened these settled principals by holding that

1

the defendant officer was not entitled to qualified immunity as he violated the far too general right to "be free from the application of non-trivial force for engaging in mere passive resistance." Id. To the contrary, the Supreme Court held that the Court of Appeals should have asked whether "clearly established law prohibited the officers from stopping and taking down a man **in these circumstances**." Id. (emphasis added.) In making such an inquiry, the Supreme Court held that:

> "We have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.... While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate.... Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.... But a body of relevant case law is usually necessary to clearly establish the answer...."

Id. quoting D.C. v. Wesby, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018). Therefore, the Court here should ask whether or not the actions of Sergeant French were, beyond debate, unlawful.

In opposing Defendants' argument for qualified immunity here, Plaintiff asserts that Defendants violated Thevenin's "right to be free from deadly force unless French feared for his safety." However, such a general statement of a right does not rise to the level of specificity demanded by the Supreme Court in Kiesla or City of Escondido. Rather, in claims of excessive force, "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' **the specific facts at issue**." Kisela, 138 S. Ct. 1153 (emphasis added). Notwithstanding, Sergeant French indeed testified that he was in fear for his safety, and the reasonableness of this belief was affirmed by non-party witness Keith Millington, the only other witness to French utilizing his weapon. Also, such a standard is higher than what is required to entitle Sergeant French to the justification defense offered by New York State Penal Law §35.30 which allows an officer to utilize deadly physical force where they reasonably believe that, *inter alia*, the use of

2

force is necessary to defend the officer from what the officer reasonably believes to the use or imminent use of deadly physical force.[1]

In support of the "clearly established right" alleged to have been violated by Sergeant French, Plaintiff cites exclusively to O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29 (2d Cir. 2003). However, this Court, in Rose v. City of Utica, No. 614CV01256BKSTWD, 2018 WL 2041621 (N.D.N.Y. Apr. 19, 2018), expressly examined and rejected the utility of O'Bert for exactly the purpose that Plaintiff invokes it for in the case at bar. See also Shepherd on Behalf of Estate of Shepherd v. City of Shreveport, No. 18-30528, 2019 WL 1467340, at *4 (5th Cir. 2019) (Rejecting assertion of "constitutional right to be free of deadly force" as too vague to be a "clearly established right" for qualified immunity purposes.)

In Rose, Plaintiff asserted a claim pursuant to USCA §1983 against a defendant officer who shot decedent. Plaintiff there cited to O'Bert, asserting that it was clearly established that "an officer may use deadly force only if there is a significant threat of death or serious injury to the officer or others." However, relying on Kisela and rejecting such an argument, this Court held that:

> O'Bert, however, does not help Plaintiffs. To the extent that they rely on the general formulation of the Garner/Graham rule that an officer may use deadly force only if there is a significant threat of death or serious physical injury to the officer or others, their reliance is unavailing, as 'general statements of the law are not inherently incapable of giving fair and clear warning to officers ... [and] the general rules set forth in Garner and Graham do not by themselves create clearly established law outside an obvious case.' Kisela, 138 S.Ct. at 1153 (internal quotation marks omitted). O'Bert is likewise unhelpful to the extent Plaintiffs rely on its particular fact pattern, as it is not analogous to the facts presented here."

Rose 2018 WL 2041621, at *11.

Rather, according to the Court in Rose, the right that must have been clearly established in order to defeat summary judgment was, as demanded by Kisela, far more specific:

---

[1] Plaintiff did not oppose the entitlement of Sergeant French to the defense of justification pursuant to New York State Penal Law § 35.30.

3

"whether it was clearly established, on July 14, 2013, that a police officer could not lawfully use deadly force in a situation where an armed individual had reportedly been firing a shotgun inside a public park, did not react to the approaching officer's command to drop the shotgun, and turned toward the officer while holding the shotgun in his hands." Id.

Plaintiff strenuously attempts to distinguish case law proffered by Defendants to support Sergeant French's entitlement to qualified immunity, but in doing so, neglects to point to case law or any cognizable argument that a clearly established right of Thevenin was violated on April 17, 2016 under the circumstances of the instant case.

Defendants have proffered extensive precedent and case-law to demonstrate that no clearly established right of Thevenin was violated by Sergeant French, and that such conduct was in fact reasonable. Plaintiff, on the other hand, has failed to demonstrate that a sufficiently clear established right existed and was violated. As Plaintiff cannot identify, and indeed Defendants have not found, a single case nor body of precedent which "squarely governs the facts at issue" and holds that a clearly established constitutional right exists under these circumstances, it cannot be held that Sergeant French violated a right of Thevenin whose "contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Kisela 138 S. Ct. 1153. At most, Plaintiff can suggest that reasonable officers would disagree as to whether or not Sergeant French violated clearly established law. Therefore, Sergeant French is entitled to qualified immunity. See Estate of Priolo by Priolo v. City of New York, No. 15-CV-6080(AMD)(ST), 2019 WL 1428403, at *6 (E.D.N.Y. Mar. 29, 2019).

## II. PLAINTIFF MISSTATES THE LAW GOVERNING QUALIFIED IMMUNITY

Plaintiff asserts that a determination of entitlement to qualified immunity depends on a two-step process involving first, a determination of whether the right at issue was clearly established, followed by a determination as to whether an officer's actions were objectively reasonable. However, it is well settled that the District Courts are no longer obligated to consider

4

both qualified immunity prongs. See Pearson v. Callahan, 555 U.S. 223, 242, 129 S. Ct. 808, 821, 172 L. Ed. 2d 565 (2009). Indeed, the Southern District has recognized "the Supreme Court's admonition to 'think hard, and then think hard again' before addressing both qualified-immunity prongs." Rothbein v. City of New York, No. 18-CV-5106 (VEC), 2019 WL 977878, at *4 (S.D.N.Y. Feb. 28, 2019) quoting Camreta v. Greene, 563 U.S. 692, 707, 131 S. Ct. 2020, 2032, 179 L. Ed. 2d 1118 (2011). Therefore, this Court has "discretion to decide whether that [the two-step procedure] is worthwhile..." Pearson, 555 U.S. 223.

### III.  THE CASES CITED TO BY PLAINTIFF SUPPORT THE GRANTING OF SUMMARY JUDGMENT TO DEFENDANTS

Plaintiff cites to Godawa v. Byrd, 798 F.3d 457, 466 (6th Cir. 2015) for the proposition that "at the very least, questions of fact exist as to whether a reasonable officer would have believed shooting Edson was lawful." See Plaintiff's Memorandum of Law in Opposition to Rule 56 Motion at Point II.  However, aside from being of dubious utility in resolving the issue of qualified immunity here, Plaintiff's assertions of Godawa's factual congruity with the instant case do not withstand scrutiny. The Sixth Circuit distinguished the facts in Godawa from those in, Brosseau v. Haugen, 543 U.S. 194, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004), in which the Supreme Court upheld a defendant officer's assertion of qualified immunity in a case much more akin to the facts here.[2] In distinguishing Godawa, from Brosseau (and indeed this case), the Godawa Court noted that at the time the shots were fired, the defendant officer was positioned behind the decedent's vehicle as it was fleeing away from him, and would have had no reason to fear being struck by the vehicle. Further, the Court noted that there was no physical encounter between the officer and the decedent prior to the shooting as there had been in Brosseau (and also in this case). Here, it is not

---

[2] A full analysis of Brosseau and its application to this case is contained in Defendants' Memorandum of Law in support of the instant motion.

5

alleged that Sergeant French was behind Thevenin's vehicle when the shots were fired. It is also uncontested that there was an altercation between French and Thevenin before the ensuing chase. R. 168 – 172; *see also* Plaintiff's Memorandum of Law at 3. Indeed, the Godawa court noted that "[w]here a suspect is attempting to flee in a vehicle, police officers are 'justified in using deadly force against a driver who objectively appears ready to drive into an officer or bystander with his car.'" Godawa 798 F.3d 464 quoting Cass v. City of Dayton, 770 F.3d 368, 375 (6th Cir. 2014).

Plaintiff cites to Cox v. Vill. of Pleasantville, 271 F. Supp.3d 591 (S.D.N.Y. 2017) to distinguish the cases cited by Defendants.[3] While the Cox court did deny summary judgment as to qualified immunity, it held that "the facts presented by [p]laintiff show only that [defendant officer] ran into the path of an oncoming vehicle and began firing immediately into the windshield. For that reason, the cases cited by Defendants are distinguishable." Cox 271 F. Supp.3d 615. In the case at bar, there is no such allegation nor any testimony that French ran into the path of a vehicle and immediately began firing. Therefore the critical fact that the Cox court relied upon in distinguishing Cox from the cases cited by the defendant is absent here and Cox is of little help in the instant analysis. Rather, for the reasons detailed in Defendants' Memorandum of Law in support of the instant motion, Mullenix v. Luna, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) and Plumhoff v. Rickard, 572 U.S. 765, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014), are instructive in considering the question of qualified immunity in the case before the court.

## IV. THE FACTS NECESSARY TO AWARD DEFENDANT SUMMARY JUDGMENT ARE NOT CONTESTED

Plaintiff takes significant issue with Defendants' presentation of the facts and devotes a large part of their brief to pointing out alleged contradictions and factual questions. However, the

---

[3] Cox was filed on September 26, 2017, after the events at issue in this case, so it cannot be considered as supporting a "clearly established right" which French would have been aware of. Further, the Southern District also held, after Cox, that in considering whether or not a right is "clearly established," "District court opinions do not provide clearly established law." Jones v. Muniz, 349 F. Supp.3d 377, 386 (S.D.N.Y. 2018).

purported contradictions relied upon by Plaintiff, to the extent they are actually contradictory, are immaterial to the determination of the dispositive issues in this case. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[T]the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id.

The facts material to a determination of qualified immunity here relate to whether or not, at the time Sergeant French utilized his weapon and under the circumstances which he faced, he was violating a clearly established constitutional right of Thevenin which was defined by sufficiently definite contours. See City of Escondido, 139 S. Ct. 503. There are four witnesses who provided testimony relating to the crucial, split-second, moments when Sergeant French fired his weapon, and none undermine the granting of summary judgment.

French himself testified that at the time he fired his weapon, he feared that he was "going to die." R. 189 – 191. While Plaintiff asserts that this fact is contradicted by the testimony of other witnesses, this dispute is disingenuous as neither Montanino, Millington nor Gross offered testimony as to French's own state of mind at the time he fired his weapon. Indeed, **Montanino and Gross did not see French fire his weapon**, and Millington ratified French's fear, testifying that French was in danger and that Millington himself would have taken the same action if he was in French's position (Emphasis Added).

Plaintiff does not contest that Millington testified that French fired his weapon "simultaneously" as he was being driven into by Thevenin and continued firing after being hit by

7

Thevenin's vehicle. See Plaintiff's Counter Statement of Material Facts at Response 187; R. 660. Plaintiff also does not contest that Millington testified that he subjectively believed that Sergeant French's life was in danger at the time he fired his weapon, and that he would have taken the same action in French's position. Id. at Response 188, 189, R. 726 – 727. Thus, Millington's testimony is wholly consistent with the testimony of Sergeant French. Any differences in their testimony are immaterial in the qualified immunity analysis.

Captain Montanino testified that he did not actually observe Sergeant French fire his weapon at any point, but heard two distinct sets of gunshots and testified that after the first set of shots, he was able to observe that French was pinned between the vehicles. Plaintiff's Counter Statement of Material Facts at ¶¶224 - 227.

Critically, Phil Gross, upon whose testimony Plaintiff relies upon to a great degree in order to dispute the testimony of the other three witnesses, did not actually observe Sergeant French fire his weapon and at no point observed a gun in the hands of Sergeant French. Gross's vision was further obscured as a result of the "blinding" lights of the vehicles at the scene. R. 764 - 65, 773, 846 - 47. Indeed, he testified in response to questioning by Plaintiff's counsel that his initial perception was that it was Thevenin who had fired a weapon, and noting he could not see because "the lights were so blinding". R. 764 – 765, 846 – 47. Rather, his interpretation of when the shots were fired are based on his hearing of what he perceived to be eight to twelve gunshots. R. 765–65. Further, his testimony contained a number of inconsistencies relating to whether or not Montanino's vehicle was on scene at the time the shots were fired as well as to whether or not the Thevenin vehicle was moving at the time he heard shots being fired. See R. 773, 776. Contrary to Plaintiff's characterization of his testimony, when Gross was presented with his statement to the Attorney General's Office by Plaintiff's counsel, Gross testified that his recollection was refreshed

and that he perceived that the shots were fired as the Thevenin vehicle impacted the Montanino vehicle. R. 801. Unfortunately, Mr. Gross' refreshed recollection stands contrary to his previous testimony in response to questioning by Plaintiff's counsel that, at the time the shots were fired, there was approximately eight feet between the Thevenin vehicle and the Montanino vehicle. R. 767.

With these facts considered, the Sixth Circuit's holding in Godawa 798 F.3d 464, cited to by Plaintiff, renders clear the disposition of this case: "[w]here a suspect is attempting to flee in a vehicle, police officers are 'justified in using deadly force against a driver who objectively appears ready to drive into an officer or bystander with his car.'" The only two perceptive witnesses to Sergeant French actually firing his weapon, French and Millington, both testified as to the clear danger that French found himself in when his weapon was discharged. As such, the force utilized was reasonable, and Sergeant French is, at the very least, entitled to qualified immunity.

Even granting credence to Plaintiff's characterization of the facts, and assuming there existed evidence which would support a finding that Sergeant French fired his weapon before the vehicle was moving towards him or before it was impacting him, the Third Circuit addressed an analogous case and found that the officer would not only be entitled to qualified immunity in such an instance, but that the defendant officer's actions were objectively reasonable.

In Martin for Estate of Webb v. City of Newark, No. 18-1228, 2018 WL 6828424, at *4 (3d Cir. 2018) the decedent was shot in the back and died after entering a stolen car. The court acknowledged that many of the facts were disputed, but focused on the context of the case as detailed by plaintiff. The decedent had walked away from the officer and re-entered a vehicle's driver's seat. The officer and the decedent engaged in a struggle through the open door, and the officer warned that he would fire if the decedent started the car. Although disputed by defendant,

9

plaintiff claimed that the decedent was shot after he turned the key in the ignition. The court, in determining that the defendant's conduct was reasonable, held that the decedent posed a threat to the officer's life in that he could reasonably fear being injured by the imminently moving car. "Even assuming that the car had not yet moved at the time of the shooting, a reasonable officer in [defendant's] position would have feared for his life given [decedent's] bold actions." Id.

In addressing the entitlement of the officer to qualified immunity, the Godawa Court noted that he "is entitled to qualified immunity because it was not clearly established, in October 2011, that an officer uses excessive force when he shoots at a driver who starts a car despite having been warned not to and does so while the officer is positioned between the car and its open driver's side door. Additionally, the officer "need not have awaited movement of the car to protect himself." Id.

Similar here, the location of the car, and whether or not it was moving are not necessarily material to a determination of this case. Whatever facts are contested by the inconsistent testimony given by Gross should not preclude summary judgment in favor of Defendants as such facts are immaterial under the law governing qualified immunity. See Anderson 477 U.S. 247–48.

The dispositive factor here is whether or not it was clearly established within sufficiently definite contours, that Sergeant French could not use deadly force to protect himself in the circumstances he faced on the night of the incident. It is submitted that there is no such right, and Sergeant French is therefore entitled to qualified immunity. Similarly, the force utilized by Sergeant French was reasonable as he had probable cause to fear for his safety given the bold actions of Thevenin in his attempts to flee from the scene of the attempted DWI arrest and his continued efforts to flee the scene of the crash. See R. 191, 726 – 727.

## **CONCLUSION**

For the forgoing reasons, it is respectfully requested that the Court issue an Order pursuant to Fed. R. Civ. P. Rule 56 granting summary judgment and dismissing this action and allowing Defendants to submit an application for the recovery of attorney's feed pursuant to 42 U.S.C. §1988, together with such other further and different relief as is just and proper.

Dated: April 16, 2019

*s/ John D. Aspland, Jr.*
John D. Aspland, Jr., Esq.
Bar Roll #512134
FitzGerald Morris Baker Firth PC
Attorneys for Defendants
68 Warren St.
Glens Falls, NY 12801
(518) 745-1400

Michael A. Brandi, Esq.
Bar Roll #700481
FitzGerald Morris Baker Firth PC
Attorneys for Defendants
68 Warren St.
Glens Falls, NY 12801
(518) 745-1400