



John D. Aspland, Jr.
*Partner*
jda@fmbf-law.com

July 17, 2019

Magistrate Judge Daniel Stewart
United States District Court
Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

Re: Cinthia Thevenin v. City of Troy, *et al.*
    Index No.: 1:16-cv-1115 (NAM/DJS)
    Our File No.: 11166-0001

Dear Magistrate Stewart:

This office represents the Defendants in the above referenced matter. Pursuant to the Order of Your Honor following the telephone conference on July 9, 2019, this letter is submitted in reply to the letter from Neil Torczyner dated July 12, 2019 regarding DE 115 concerning the sealing of materials which are confidential pursuant to New York State Civil Rights Law § 50-a and in reply to the letter from Steven Harfenist dated July 12, 2019 regarding DE 116 concerning the undisclosed identity of Plaintiffs' source of information concerning the ISB report. This letter will also address the applicability and impact of Brown v. Maxwell, No. 16-3945-CV, 2019 WL 2814839 (2d Cir. 2019) on the case at bar.

Initially, Plaintiffs appear to misinterpret Defendants' request made in its July 8, 2019 letter under DE 115. Defendants' request is not to limit Plaintiffs' use of the ISB report or any ISB material ordered disclosed to Plaintiffs by the Court within this litigation, to the extent such material is material, relevant and admissible. Rather, the request is for a protective order prohibiting the public disclosure of such materials.

Further, Plaintiffs' counsel appears to take offense at the arguments posed in Defendants' letter dated July 8, 2019 under DE 116, however, as noted in that letter, Defendants are unaware of the identity of the source, so can only speculate as to how Plaintiffs' counsel could have obtained this information.

**Brown v. Maxwell**

The Second Circuit in Brown v. Maxwell reviewed the Southern District's denial of parties' respective motions to unseal certain records. The Second Circuit, recognizing that

"without vigilance, courts' files might 'becomes a vehicle for improper purposes,'" reviewed the methods available to District Courts to protect the judicial process from being coopted for improper purposes. Id. quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598, 98 S. Ct. 1306, 1312, 55 L. Ed. 2d 570 (1978).

The Second Circuit recognized that the District Courts have supervisory power and responsibility to ensure that their own records and files "are not used to gratify private spite or promote public scandal" or "serve as reservoirs of libelous statements for press consumption." Id. To fulfill this responsibility, the District Court has the power to issue protective orders forbidding dissemination of certain material to "protect a party or person from annoyance, embarrassment, oppression, or undue burden" and require that filings containing such materials be submitted under seal. Id. A Court may also address the credibility of certain statements on the record, or strike material which is "redundant, immaterial, impertinent or scandalous." Id. Indeed, the fifth enumerated holding of the Second Circuit was that "District Courts should exercise the full range of their substantial powers to ensure their files do not become vehicles for defamation."

The Court, in ordering the unsealing of the underlying information, did so only after making certain redactions of personally identifying information, "as well as deposition responses ... where the questions **were likely only permitted** – and the responses only compelled – because of a strong expectation of continued confidentiality." Id. at N. 52 (emphasis added). The Second Circuit therefore recognized the ability of the District Courts to restrict the dissemination of certain information which comes into being as a likely result of an expectation of confidentiality.

In this case, pursuant to Brown v. Maxwell, even if a record is classified as a judicial document, it is clear that this Court has the power, after conducting a particularized review, to order that records be prohibited from dissemination in order to protect a party or person from annoyance, embarrassment, oppression or undue burden.

Further, statements contained in the ISB file and report may have been given because of and in reliance upon an expectation of confidentiality. Indeed, the letters which noticed interviewees of their obligation to be interviewed note that the interviewee is subject to the rights afforded by the Constitution of the United States, the Constitution of the State of New York, and the rights contained within the collective bargaining agreement between the City of Troy, New York and the Troy Police Benevolent and Protective Association, Inc. It is submitted that such statements were "likely only permitted" upon an expectation of confidentiality. See Rose v. City of Utica, No. 614CV01256BKSTWD, 2018 WL 2041621, at *4 (N.D.N.Y. 2018) citing Garrity v. State of N.J., 385 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967).

As such, Brown v. Maxwell is supportive of this Court's power and responsibility to utilize protective orders to protect certain information, the disclosure of which would result in annoyance, embarrassment, oppression, or undue burden to a person or party.

## New York State Civil Rights Law §50-a

To say that Civil Rights Law §50-a is inapplicable to these proceedings would be technically incorrect. While Federal Courts do not have to recognize state created privileges, they instead should "perform a balancing analysis between the protection afforded such records and a party's need for relevant information." Gibbons v. Prindle, No. 9:12-CV-1605 FJS/RFT, 2014 WL 2177089, at *2 (N.D.N.Y. 2014). Indeed, Hon. James T. Foley aptly noted that "State evidentiary privileges should be accepted unless there is an overriding federal policy which would be undermined by deference to the particular state privilege claimed or if it would be manifestly inequitable from the facts to uphold it; the determination is to be made by applying an interest balancing test." Inmates of Unit 14 v. Rebideau, 102 F.R.D. 122, 127 (N.D.N.Y. 1984).

In performing its balancing analysis, the Court "must consider the effect of a protective order restricting disclosure to the plaintiff and the plaintiff's attorney, or to the plaintiff's attorney alone. Such an order can mitigate many if not all of the oft-alleged injuries to the police and to law enforcement." Floyd v. City of New York, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010) quoting King 121 F.R.D. 190; see also Dorsett v. Cty. of Nassau, 762 F. Supp. 2d 500, 524 (E.D.N.Y.), aff'd, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), aff'd sub nom. Newsday LLC v. Cty. of Nassau, 730 F.3d 156 (2d Cir. 2013).

The interests protected by the Legislature in enacting §50-a go beyond the litigation within which the information is sought as the statute was created to prevent attacks on "police officers' credibility in pending litigation or for harassment purposes." Capital Newspapers Div. of Hearst Corp. v. Burns, 67 N.Y.2d 562, 568, 496 N.E.2d 665 (1986). While Plaintiffs assert that they are not seeking to cross-examine a witness on a collateral matter, the public disclosure of the ISB materials would allow parties in any other context to use the materials for such undesirable purposes. As such, the ill-effects of disclosure which are contemplated by §50-a extend beyond the umbrella of the litigation within which disclosure is sought.[1]

Public release of the ISB materials would undeservedly and wrongfully cast a pall over any future proceedings in which Defendants may be involved. Indeed, Sergeant French has already been subject to questioning in open court concerning the instant matter in unrelated criminal proceedings in which he is a witness by virtue of his occupation. See Kenneth C. Crowe II, Deadly Shooting Follows Officer, ALBANY TIMES UNION, March 24, 2019, attached hereto as Exhibit "A." The defense attorney in the matter detailed by the Times Union noted "This is just the beginning of Randy French's problems in the courtroom." The release of the ISB materials and report would exacerbate these already troubling circumstances, and are squarely results which the Legislature sought to avoid in enacting Civil Rights Law §50-a.

---

[1] See Daily Gazette Co. v. City of Schenectady, 93 N.Y.2d 145, 158, 710 N.E.2d 1072, 1077 (1999). ("Potential abusive exploitation of the damaging information in personnel records exists irrespective of how, at whose behest or for what purpose the information is released into the public domain. Thus, in this case, once petitioners are able to obtain and publish the respective identities, misconduct and disciplinary sanctions of the 18 Schenectady police officers here, the information will be fully available for all of the forms and practices of abusive exploitation that Civil Rights Law § 50–a was designed to suppress. Such a facile means of totally undermining the statutory protection of section 50–a could not have been intended by the Legislature.")

Here, the ISB report and records have been provided to Plaintiffs, and is available for their use in this litigation. The issuance of a protective order restricting disclosure to Plaintiffs' attorneys would satisfy Plaintiffs' interest in utilizing the records for the instant litigation, and would also protect the interests of Defendants which the New York State Legislature thought important to secure. Simply, there are no legitimate litigation related purposes that Plaintiffs can articulate which militates for the public release of otherwise confidential documents.

Plaintiffs aver to Collado v. City of New York, 193 F. Supp. 3d 286, 291 (S.D.N.Y. 2016) as a case purported to be "nearly identical" to the case at bar and for the proposition that judicial documents are subject to a strong presumption to public access.[2] However, while this general proposition is true, if a record is a judicial document, it still may be properly sealed where "preservation of 'higher values' requires sealing and [where] the requested sealing is narrowly tailored to that objective." Rose v. City of Utica, No. 614CV01256BKSTWD, 2018 WL 2041621, at *4 (N.D.N.Y. Apr. 19, 2018) quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006).

In Rose, Defendants resisted disclosure of Defendant Police Officer's personnel file. While it was uncontested that documents were judicial documents, the Defendants argued that:

> "not sealing the records will impair the effectiveness of law enforcement" and "could infringe on the officer's constitutional rights." Defendants contend that making an internal affairs investigation public, when officers under investigation are required to give compelled statements protected under Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and also given the impression of confidentiality, could impair law enforcement's ability to conduct future internal affairs investigations. Id.

Addressing Defendants' argument, this Court granted the motion to seal, holding that "[u]pon review of the specific personnel files sought to be sealed in this case, the Court finds that they reflect sensitive information, including information concerning a confidential Utica Police Department internal affairs investigation and that disclosure could impair law enforcement efficiency. Notably, the Court withheld the entire personnel file.

Here, even assuming that the ISB materials are judicial documents, this Court may, pursuant to Brown v. Maxwell, seal the documents upon the demonstration that "higher values" require sealing and that sealing is narrowly tailored to serve those values. Here, the higher values to be served by sealing are those underlying the enactment of Civil Rights Law §50-a and which were acknowledged by the New York State Court of Appeals in Daily Gazette Co. It was upon these "higher values" that this Court sealed of the personnel records of a defendant police officer in Rose. It is respectfully submitted here that the Court do the same with the ISB materials in issuing

---

[2] The Southern District noted that the records in Collado which Defendant argued were subject to Civil Rights Law §50-a were "unquestionably relevant," and "comprise a significant proportion of the factual record before the court." This is not the case here as the use of the ISB report is of questionable admissibility, relevance and materiality.

a protective order pursuant to Rule 26 and sealing the ISB materials and report from public disclosure.

Further, Defendants object to Plaintiffs' request to submit a supplemental letter brief referring to the ISB materials as the ISB materials are redundant, inadmissible, and not material to the issues raised by Defendants' Motion for Summary Judgment.

If the Court grants Plaintiffs' request to provide a supplemental letter brief, Defendants respectfully request the opportunity to reply via a letter brief to Plaintiffs' supplemental letter brief.

**Plaintiffs' Source Must be Disclosed Pursuant to F.R.C.P. Rule 26.**

Defendants' argument that they are entitled to disclosure of the identity of the source of Plaintiffs' information concerning the ISB materials is bolstered by Plaintiffs' letter brief in opposition. Plaintiffs have requested via letter dated July 12, 2019, that they be allowed to submit a five page letter brief as a supplemental submission regarding Defendants' pending Motion for Summary Judgment in order to reference the ISB report and materials. Plaintiffs have refused to disclose a source, the identity of whom is in their possession, who clearly possesses information which relates to this material.

Plaintiffs' counsel asserted in a June 19, 2019 letter that they had become aware of: (1) an internal affairs file; (2) an internal affairs report; (3) the identity of the individual who prepared the report; (4) the approximate length of the report and; (5) the fact that the report is related to the shooting forming the basis of Plaintiffs' claims. Plaintiffs' counsel Michael Rose avers in his declaration dated July 12, 2019, that he was not provided with any substantive information about the ISB report. Mr. Rose further avers that this individual is not an employee of the City of Troy or the Troy Police Department. It is not clear whether or not this individual disclosed to Plaintiffs' counsel everything that is in their knowledge concerning the ISB file.

F.R.C.P. Rule 26 requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."

As this person is a non-party, unknown to Defendants, and clearly has, according to the Rose Declaration and June 19, 2019 letter, discoverable information which is pertinent to the ISB materials and report which Plaintiffs' plan to utilize in their opposition to Defendants' Motion for Summary Judgment, it is clear that Plaintiffs have an obligation to disclose the source's identity pursuant to F.R.C.P. Rule 26.

Regardless of what Plaintiffs' Counsel was told or not told by this individual, Defendants' have a right to disclosure of this person's identity as a potential witness as this person or these persons clearly possess information which is may reasonably be discoverable and pertinent to the ISB report and materials.

Plaintiffs' Counsel asserts without legal authority that there is "no basis under F.R.C.P. Rule 26 to identify a person who knows that a document exists." However, it is clear that this individual knows more than just the "existence" of the ISB report. Indeed, they know of the existence of the report, but also the underlying file, the name of the preparer of the report, the subject matter of the report and the approximate length of the report. While this was the information conveyed to Plaintiffs' Counsel, it is not clear if this is in fact the full extent of this individual's knowledge, making it all the more critical that their identity be disclosed to Defendants. This argument squarely puts aside the obvious departmental need to know of the civilian source discussing this confidential information.

Finally, this information was demanded by Defendants pursuant to F.R.C.P. Rule 34 in Paragraph 1 of Defendants' Demand for Production of Documents dated April 18, 2018, which demanded, *inter alia*, that Plaintiffs provide the names and addresses of all persons who have knowledge of statements or admissions made by Defendants, their agents, servants, or employees or any party to this action.

**Non-Disclosure of the ISB report and materials**

Upon receipt of Plaintiffs' June 19, 2019 letter, I inquired of the City as to the existence of an ISB report and ISB materials. I learned that indeed such a report existed along with other documents maintained by the ISB, much of which is duplicative of previous disclosures, including the prior disclosure of Appendix A to the ISB report which is titled "Motor Vehicle Forensic Analysis Report" prepared by CMSC. This CMSC report was disclosed on December 21, 2018 and was soundly critiqued by both the Plaintiffs' and Defendants' respective experts. As of the writing of this letter, the subject ISB report has not been acted on by the Troy Police Department and as the Court is aware the Troy Police Department commissioned an independent third-party review by an attorney of the unsigned ISB report to address certain portions of the report specifically, as well as the ISB report in general. The subject ISB report is not considered to be in an approved or final form by the Police Department. As the Court may be aware, during the course of this litigation there has been a change in the Office of Corporation Counsel as well as in the position of police chief and both assistant police chiefs. The instant ISB report was maintained as confidential as it was the belief of the City that the report and materials gathered in its preparation were confidential pursuant to New York State Civil Rights Law §50-a which under ordinary circumstances is the case. The changes to some key personnel and the reliance on the confidentiality provided by Civil Rights Law §50-a together with the normal workings of collective bargain agreement protections lead to a reliance that I should have anticipated and corrected so that this argument could have occurred some months prior to when it has. Additionally, the volume of material demanded, reviewed and disclosed, the number of depositions and the trajectory of the case culminating in the submission of the extensive Rule 56 motion were mitigating factors to the instant situation, though not offered as an excuse but merely for context. In the face of the demand made by counsel the process seeking the protections of §50-a before this Court was engaged in, the City promptly turned over the ISB materials including the report which were in turn turned over to the Court and to Plaintiffs' Counsel at the Court's direction.

Very truly yours,

John D. Aspland, Jr.
Bar Roll #512134
JDA/mas
Enc.