MANDATE

19-3085-cv
*Thevenin v. French*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of March, two thousand twenty-one.

PRESENT:
        PIERRE N. LEVAL,
        GERARD E. LYNCH,
        JOSEPH F. BIANCO,
            *Circuit Judges.*

_____

Cinthia Thevenin, individually and as wife of Edson Thevenin, Decedent, and as Administratrix of the Estate of Edson Thevenin, and as mother and natural guardian of Infant N.T. and as mother and natural guardian of Infant Z.T.,

        *Plaintiff-Appellee*,

    v.                                      19-3085-cv

Danielle French, as Administratrix of the Estate of Sergeant Randall French,

        *Defendant-Appellant*,

City of Troy,

        *Defendant*.

_____

MANDATE ISSUED ON 04/05/2021

| | |
|---|---|
| FOR PLAINTIFF-APPELLEE: | STEVEN J. HARFENIST (Neil Torczyner, *on the brief*), Harfenist Kraut & Perlstein, LLP, Lake Success, NY. |
| FOR DEFENDANT-APPELLANT: | JOHN D. ASPLAND, JR., FitzGerald Morris Baker Firth, PC, Glens Falls, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Stewart, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Danielle French, as administratrix of the estate of Randall French ("French"), a former Sergeant in the Troy Police Department, appeals from a judgment, entered on September 6, 2019, by the United States District Court for the Northern District of New York (Stewart, *M.J.*), denying her motion for summary judgment under Federal Rule of Civil Procedure 56(a). Defendant challenges the district court's ruling that French is not entitled to qualified immunity at the summary judgment stage against Plaintiff-Appellee Cinthia Thevenin's claims of excessive force in violation of her husband Edson Thevenin's ("Thevenin") constitutional rights under 42 U.S.C. § 1983 and New York law. In this lawsuit, plaintiff claims that French shot and killed Thevenin on the Collar City Bridge in the City of Troy, after Thevenin refused to be arrested by French for suspected driving while intoxicated and led the police, including French, on a low-speed chase, which resulted in Thevenin colliding with a concrete barrier on the bridge. More specifically, plaintiff alleges that French used deadly force without justification because, at the time of the shooting on the bridge, Thevenin posed no threat to the safety of French or anyone else. Defendant disputes these allegations and, asserts that French fired the shots because Thevenin had

2

used his car to pin him between Thevenin's car and his police vehicle, he heard the engine "revving," and he believed he "was going to die." App'x at 282-85. The district court denied defendant's summary judgment motion because it found that the disputes of material fact created by various witnesses over the position and movement of Thevenin's car at the time of the shooting precluded a summary judgment determination on whether French was entitled to qualified immunity.

We review *de novo* a district court's denial of summary judgment based on a claim of qualified immunity, *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019), and in doing so, resolve all ambiguities and draw all factual inferences in plaintiff's favor as the non-moving party, *Cugini v. City of New York*, 941 F.3d 604, 611 (2d Cir. 2019). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

### I. <u>Jurisdiction</u>

As a threshold matter, plaintiff contends that this Court does not have jurisdiction to hear this appeal because the district court found genuine issues of material fact with respect to defendant's claim for qualified immunity. Defendant counters that we have jurisdiction over this appeal because her appeal is limited to plaintiff's version of the facts, as to which defendant argues qualified immunity exists.

Although "[o]rders denying summary judgment are generally not immediately appealable 'final decisions' under 28 U.S.C. § 1291," *Bolmer v. Oliveira*, 594 F.3d 134, 140 (2d Cir. 2010), we do have jurisdiction over interlocutory appeals of orders denying summary judgment based on claims of qualified immunity "to the extent the immunity claim presents a 'purely legal question,'"

3

*Mara*, 921 F.3d at 68 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). "Even where the lower court rules that material disputes of fact preclude summary judgment on qualified immunity, we may still exercise interlocutory jurisdiction if the defendant . . . contends that he is entitled to qualified immunity even under plaintiff's version of the facts." *Coons v. Casabella*, 284 F.3d 437, 440 (2d Cir. 2002) (alteration in original) (quoting *Tierney v. Davidson*, 133 F.3d 189, 194 (2d Cir. 1998)). Accordingly, as defendant has limited our review to the version of facts most favorable to plaintiff, we retain jurisdiction over this appeal to that extent, and we disregard any disputed facts that contradict that version in determining whether French is entitled to qualified immunity.

## II. <u>Qualified Immunity</u>

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). As set forth in the two-step framework articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), when an official raises qualified immunity as a defense, the court must consider whether: "(1) . . . the official violated a statutory or constitutional right, and (2) . . . the right was 'clearly established' at the time of the challenged conduct." *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (internal quotation marks omitted). A constitutional right is clearly established if it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (internal quotation marks omitted). "We do not require a case directly on

4

point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Defendant argues that French is entitled to qualified immunity because it would not have been clear to a reasonable officer, based on existing precedent, that French's conduct was unlawful in the situation that he faced, even viewing the facts most favorably to plaintiff. We disagree.

As an initial matter, at the time of the incident at issue, it was clearly established law in this Circuit, as articulated in *Cowan ex rel. Estate of Cooper v. Breen* in 2003, that "it is not objectively reasonable for an officer to use deadly force to apprehend a [fleeing motorist] unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 352 F.3d 756, 764 (2d Cir. 2003) (internal quotation marks omitted). With that clearly established law in mind, we discern the relevant facts as construed most favorably to plaintiff as follows: Thevenin resisted French's attempt to arrest him for driving while intoxicated and led French on a "low to average" speed chase that ended with his Honda "light[ly] colli[ding]" with a concrete barrier on the bridge. App'x at 520, 862. This collision allowed French and Captain Matthew Montanino (assisting in pursuit) to position their police vehicles close to the front and rear of Thevenin's Honda. At that point, according to one eyewitness (who was the owner of a nearby automotive shop and witnessed the incident from about fifty feet away), French exited his police vehicle and, without saying anything, fired eight to twelve shots at Thevenin all at once. That eyewitness further testified at his deposition that, at the time of the shooting, Thevenin's Honda and French's police car were about four feet apart, and

5

the Honda was not moving.[1]  The eyewitness also explained that, after the shooting, Thevenin's Honda began rolling forward, causing French to be trapped between the Honda and his own police vehicle, and the eyewitness then helped to move the Honda back and free French.  Under this version of the facts, as to which a rational jury could find that Thevenin posed no significant threat of death or serious physical injury to French or others at the time of the shooting, we conclude that it would have been clear to a reasonable officer in French's position that, under *Cowan*, his conduct was unlawful.  See *Treubig*, 963 F.3d at 224.  Therefore, French is not entitled to summary judgment on the question of qualified immunity.

Our determination on this issue is wholly consistent with the analysis in *Cowan* itself.  In that case, a police officer ("Breen") fatally shot the driver ("Cooper") of a Camaro who may have been fleeing from the scene where her companion had escaped from an arrest for narcotics possession.  *Cowan*, 352 F.3d at 758.  We held that, in light of the circumstances at the time of the fatal shot, where the Camaro was traveling slowly and made no sudden turns, Breen "was not in front of the vehicle but substantially off to its side," and there was otherwise no indication that he was in any danger, "no reasonable officer in Breen's position would have believed that at the crucial moment use of deadly force was necessary."  *Id.* at 763.  The Court further explained that the lawfulness of the officer's conduct could be resolved using interrogatories to the jury on key

---

[1] The eyewitness also stated at one point during his deposition that the car was moving backward (away from French).  Defendant argues accordingly that the use of lethal force would not be unreasonable in that situation.  However, we need not reach that argument because we construe any such conflict in the eyewitness's testimony at the summary judgement stage in the manner most favorable to plaintiff.  We thus assume that Thevenin's car was stationary, not moving backwards, at the time of the shooting for purposes of our qualified immunity analysis.  Similarly, as to French's location at the time of the shooting in relation to Thevenin's car, we assume that Thevenin was located off to one side of the car (as at least one other eyewitness testifies), and not in front of the car (as French testifies).

factual disputes, "such as whether Cooper drove her car towards Breen, whether Breen was in the zone of danger, and if so, whether he safely could have gotten out of the way." *Id.* at 764.

Furthermore, we are not persuaded by defendant's reliance on several Supreme Court cases regarding an officer's use of force to stop vehicular flight, which defendant suggests establish that the law was not clear as to the reasonableness of his actions. For instance, defendant points us to *Brosseau v. Haugen*, 543 U.S. 194 (2004), *Scott v. Harris*, 550 U.S. 372 (2007), *Plumhoff v. Rickard*, 572 U.S. 765 (2014), and *Mullenix v. Luna*, 577 U.S. 7 (2015), cases in which the Supreme Court held that police officers were entitled to qualified immunity for their use of deadly force against a fleeing motorist. In *Brosseau*, the Supreme Court noted that the plaintiff posed a major threat to the other officers on foot in the immediate area, the occupied vehicles in the suspect's path, and potentially other people who might have been in the area. 543 U.S. at 197, 200. In *Scott*, the plaintiff led police on "a Hollywood-style car chase of the most frightening sort," and endangered the lives of innocent bystanders, other civilian motorists, and the officers involved in the chase. 550 U.S. at 374, 380, 383-84. In *Plumhoff*, the plaintiff led officers on a high-speed chase, swerving through traffic at high speeds over 100 mph, which "posed a grave public safety risk." 572 U.S. at 769, 776. And in *Mullenix*, the plaintiff was traveling "at extremely high speeds, was reportedly intoxicated, had twice threatened to shoot officers, and was racing towards an officer's location." 577 U.S. at 14.

In each of these Supreme Court cases, and numerous other cases cited by defendant, the critical fact that allowed qualified immunity to attach to the use of deadly force by police officers was the presence of a significant threat of death or serious physical injury to either the defendant, other officers, or civilian bystanders. Here, under the version of facts most favorable to plaintiff,

7

that critical fact is completely absent. Thus, we disagree with defendant's assertion that, construing the facts most favorably to plaintiff, "[r]easonable officers with knowledge [of these cases] could very likely have a spirited debate over the bounds of force permissible in a situation as created by [Thevenin]." Appellant's Br. at 21. Indeed, when viewing the facts in the light most favorable to plaintiff, French was plainly unjustified in using deadly force against Thevenin because, simply put, no one was in danger.[2]

In an effort to point to uncontroverted evidence of such a danger, defendant maintains that it is undisputed that French was "pinned" between Thevenin's Honda and his police vehicle, and that this situation should be considered in determining whether there was probable cause to believe that he faced a significant threat of death or serious physical injury. Although defendant is correct that there is no factual dispute that French was pinned between the two cars at some point during this incident, defendant overlooks that, under plaintiff's version of the facts (based on the testimony of an eyewitness), French did not become pinned until *after* the shooting occurred. *See Nimely v. City of New York*, 414 F.3d 381, 390-91 (2d Cir. 2005) ("[T]he reasonableness of the officer's decision to use force in effectuating a seizure depends only upon the officer's knowledge of circumstances *immediately prior to and at the moment* that he made the split-second decision to employ deadly force." (emphasis added) (internal quotation marks omitted)). In other words, construing the evidence most favorably to plaintiff, a rational jury could find that, rather than

---

[2] To be sure, Montanino testified at his deposition that, after having positioned his police vehicle behind Thevenin's Honda, the Honda began moving backwards and caused him to "jump out of the way." App'x at 533. However, Montanino did not testify that Thevenin's car posed a threat of death or serious physical injury to him at that point or at any point thereafter prior to French firing his weapon. Moreover, French did not testify at his deposition that he was aware that this event with Montanino had even occurred, nor did he testify as to any other circumstance regarding Montanino, other officers, or other civilian bystanders that placed anyone (other than himself) in any danger.

8

shooting Thevenin in fear for his life because Thevenin had moved his Honda forward and pinned him between two cars (as French testified), French may have become pinned only as a result of shooting and disabling Thevenin, which caused Thevenin's Honda to roll into him. Therefore, because there is a dispute as to the timing and cause of French's "pinning," which may be critical to the qualified immunity analysis, the fact that he was pinned, by itself, cannot support his entitlement to qualified immunity at this stage of the proceedings.[3]

Finally, although we have focused on the most favorable version of the facts for plaintiff (as required for purposes of summary judgment), we note that defendant has pointed to certain evidence and testimony that support French's version of the events in question, and we express no view on how these factual disputes will ultimately be resolved. In sum, we agree with the district court that French is not entitled to qualified immunity at the summary judgment stage on plaintiff's federal claim under Section 1983, alleging excessive force in violation of Thevenin's constitutional rights.

---

[3] We note that there are similar factual disputes regarding the earlier events that transpired between French and Thevenin and led to the car chase. According to French's deposition testimony, during his attempted arrest of Thevenin, he twice employed pepper spray at Thevenin without effect, tried unsuccessfully to pull Thevenin's keys out of the ignition and prevent him from putting his car into gear, and thus found himself "halfway in the car" with the door open as Thevenin began driving away, at which point Thevenin was able to "push out of the car" unharmed. App'x at 272-73. To the extent that defendant seeks to rely on Thevenin's alleged earlier conduct to support French's later assessment of the threat to his safety on the bridge at the time of the shooting, those earlier facts are disputed by plaintiff. Although Thevenin (like French) is deceased and there appears to be no other witness who can contradict French's deposition testimony about the car stop based upon personal observations, plaintiff is still free to argue to the jury that French's testimony as to the earlier events should not be credited based upon other evidence in the record and/or credibility issues that plaintiff asserts exist with French's testimony as a whole. *See generally Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In short, the disputed facts regarding the events between Thevenin and French leading up to the encounter on the bridge, as well as how those disputed facts may have impacted French's assessment of the need to use lethal force, cannot be resolved on summary judgment.

9

### III. State Law Claims

Defendant additionally argues that because French is "entitled to qualified immunity under federal law" he is also "entitled to immunity from [plaintiff's] analogous state law claims." Appellant's Br. at 26. "New York courts recognize the defense of qualified immunity to shield the government official from liability unless that action is taken in bad faith or without a reasonable basis." *Blouin ex rel. Est. of Pouliot v. Spitzer*, 356 F.3d 348, 364 (2d Cir. 2004). For the same reasons we conclude that French is not entitled to qualified immunity on plaintiff's federal excessive force claim at this stage in the proceedings, we also conclude summary judgment is unwarranted on his analogous state law claims.

\* \* \*

We have considered all of defendant's remaining arguments and find them to be without merit. For the foregoing reasons, the order of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10